## WILSON *v.* STANDEFER.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 105.   Argued January 16, 1902.—Decided March 3, 1902.

This court, when reviewing the final judgment of a state court upholding a state enactment alleged to be in violation of the contract clause of the Constitution, possesses paramount authority to determine for itself the existence or the non-existence of the contract set up, and whether its obligation has been impaired by the state enactment; but it is the duty of this court to follow the decision of the state court when the question is one of doubt and uncertainty.

The sole question for the consideration of this court in this case is, whether the Supreme Court of Texas erred in overruling the contention of the plaintiff in error that the State was precluded by contract from changing its mode of procedure in respect to purchasers in default ; and this court agrees with the Supreme Court of Texas that no contract rights of a purchaser under the act of July 8, 1879, were impaired by the subsequent act of August 20, 1897; that the 12th section of the act of 1879, was not, in legal contemplation a stipulation by the State that the only remedy which might be resorted to by the State was the one therein provided for; that the distinction between the obligation of a contract and a remedy given by the legislature to enforce that obligation exists in the nature of things, and, without impairing the obligation of the contract, the remedy may be modified as the wisdom of the nation may direct.

THIS was an action brought in the district court of Tom Green County, Texas, in May, 1899, by J. F. Standefer against T. K. Wilson, involving the title and ownership of a tract of land containing 640 acres situated in said county.

At the trial a jury was waived and an agreed statement of facts was filed, which was as follows :

" 1. The land sued for and described in plaintiff's petition, to wit, section No. 42, district No. 11, S. P. R. R. Co., in Tom Green County, Texas, was on May 1, 1882, public free school land, being the alternate section surveyed by said S. P. R. R. Co. for the public school fund of Texas and reserved under the constitution and laws for the use and benefit of the public free schools of Texas, and was a part of the said land, the sale of which was authorized under the act of the legislature of Texas, approved July 8, 1879, and the amendment thereto approved April 6, 1881:

" 2. That on the 1st day of May, 1882, said survey of land was recognized and abstracted by the State as situated wholly in Concho County and was so recognized, abstracted, assessed for taxation and taxes paid thereon until the year 1891, when the boundary line between the counties of Concho and Tom Green was run and established under a joint survey made by the two counties, and said land was ascertained to be in Tom Green, and has since said year been recognized and abstracted by the State as situated in Tom Green County and since said year has been assessed for taxation and the taxes paid thereon in said Tom Green County.

" 3. That the county surveyor of Concho County, in obedience to and under the act approved July 8, 1879, and the amendment thereto approved April 6, 1881, viewed and appraised said land under oath, as required by said act, and made return of same to the commissioners' court of Concho County, which said court examined and approved same, classifying as suitable only for grazing purposes, no timber or water, and appraised it at $1.00 per acre.

" 4. That upon the completion of said appraisement the county commissioners' court of Concho County prepared a tabulated report of their action as to said survey, setting forth the following, to wit, 'Survey No. 42, district No. 11, 640 acres, S. P. R. R. Co., $1 per acre, suitable only for grazing purposes, no timber or water,' one copy of which said report was filed in the office of the county surveyor of Concho County, one copy forwarded to the commissioner of the general land office, and one copy to the treasurer of the State.

"5. That upon receipt of said tabulated report by the commissioner of the general land office the same was by him examined and in all things approved, and the said commissioner of the general land office notified the county surveyor of Concho County of his approval of said tabulated report and appraisement.

"6. That thereafter, on May 1, 1882, Thomas Dolan made his application, in writing, to the county surveyor of Concho County to purchase said land, which said application was as follows, to wit: 'To the surveyor of Concho County: In accordance with the provisions of an act to amend the caption and sections 1, 2, 3, 4, 5, 6, 7 and 8 of an act to provide for the sale of alternate sections of land in organized counties, as surveyed by railroad companies and other works of internal improvements and set apart for the benefit of the common school fund, to provide for the investment of the proceeds and to repeal all laws in conflict therewith, approved July 8, 1879, and to provide for the sale of such lands in unorganized counties, approved April 6, 1881, I hereby apply to purchase the following land: Section No. 42, district No. 11, Concho County, about N. 12 miles from Kickappoo Springs, surveyed for S. P. R. R. Co. certificates: Beginning at N. E. corner S. P. R. R. Co. survey 117, thence north 1900 varas, thence west 1900 varas, thence south 1900 varas, thence east 1900 varas to the place of beginning. Date, 1st day of May, 1882. (Signed) Thomas Dolan;' which said application was on same day filed with said county surveyor and recorded by him May 22, 1882, and all fees required by law paid to said surveyor.

"7. That immediately thereafter said Thomas Dolan forwarded to the state treasurer his application, with the sum of $32, being 1–20 of the appraised value of said land at $1 per acre, and said treasurer entered a credit on his books in the name of said Dolan, and thereafter, on June 22, 1882, the state treasurer issued a receipt for said first payment as follows: Treasurer's office, Austin, Texas, June 22, 1882. Received of Maddox Bros. & A. on account of Thomas Dolan the sum of $32, the same being first payment on section No. 42, district No. 11, S. P. R. R. Co., of state school land in Concho

County under an act to provide for the sale of the alternate sections of land set apart for the benefit of the common school fund. Approved April 6, 1881. (Signed) F. R. Lubbock, treasurer. And said state treasurer forwarded said receipt, together with said application, to the commissioner of the general land office, who filed said application in his office on June 22, 1882, and issued his certificate in lieu thereof, setting forth the amount paid to the treasurer, and the quantity, description and valuation of the land applied for; which said certificate was by said Thomas Dolan presented to the county surveyor of Concho County, who thereupon surveyed the land embraced in said original application, recorded the field notes thereof in his office, and forwarded same to the commissioner of the general land office and entered said land on his books July 2, 1882, as sold to said Thomas Dolan, and he paid the said surveyor all fees required by law.

"8. That when said surveyor received said application said Thomas Dolan executed and delivered his obligation to the State for the balance of the purchase money of said survey of land, said obligation being as follows, to wit: '$608.00. Note for purchase money, common school lands. For value received, I, the subscriber hereto, do promise to pay to the governor of the State of Texas and his successors in office the sum of six hundred and eight dollars, with interest thereon at the rate of 8% per annum, as hereinafter specified, the same being the purchase money for the following-described tracts of land this day purchased by me from the State of Texas in accordance with the terms of an act of the legislature of said State, viz., An act to amend the caption and sections 1, 2, 3, 4, 5, 6, 7 and 8 of an act to provide for the sale of alternate sections of lands in organized counties as surveyed by railroad companies and other works of internal improvement and set apart for the benefit of the common school fund; to provide for the investment of the proceeds, and to repeal all laws in conflict therewith, approved July 8, 1879, and to provide for the sale of such lands in unorganized counties, approved April 6, 1881, to wit, survey 42, district 11, surveyed for the S. P. R. R. Co., Concho County. I am to pay or cause to be paid into the treasury of the State

of Texas, on the first day of January of each year, one twentieth of the above amount, together with the annual interest of 8 per cent, upon the unpaid principal until this entire obligation is liquidated, and it is expressly understood that I am to comply with all the conditions and requirements and am subject to all the penalties contained and prescribed in the above-recited act. Witness my hand this the 1st day of May, 1882. (Signed) Thomas Dolan;' which said obligation was forwarded to the commissioner of the general land office and by him registered in a book kept for that purpose, setting forth the name of the purchaser, the amount and date of the obligation, the tract of land for which it was given, and the county in which situated, and endorsed said obligation as follows: 'Registered June 22, 1882. W. C. Walsh, commissioner of the general land office,' and delivered said obligation to the treasurer of the State, who filed the same in his office.

"9. That said Thomas Dolan and his vendees paid on account of interest on said obligation as the same accrued the sum of $272.65, which was received and applied as interest thereon, but the other payments of principal, except the first payment of one twentieth of the appraised value of said land, to wit, $32, which paid at the time of his said application to purchase, as aforesaid, was deferred, as authorized and permitted by said act.

"10. That thereafter said Thomas Dolan sold said land and conveyed it by deed in proper form to H. Buckley, duly acknowledged and recorded and filed in the land office, and thereafter by regular and constructive chain of transfers said title vested in the Ostrander & Loomis Land & Live Stock Company on April 4, 1888, all of which said conveyances being properly acknowledged and duly recorded and filed as required by law, each of said vendees in succession assuming to pay to the State the balance of the purchase money and interest, as provided in the obligation of said Dolan.

"11. That said land, among others, was mortgaged by said Ostrander & Loomis Land & Live Stock Company to the Knickerbocker Trust Company to secure payment of $600,000.00 due holders of its coupon bonds; that in 1892 said Ostrander & Loomis Land & Live Stock Company became insolvent and

unable to meet any of its obligations, and in a suit in the district court of Tom Green County, brought to foreclose said mortgage, judgment was entered on the 17th day of May, 1898, foreclosing the same and ordering the sale of the land so mortgaged, including said survey 42 described in plaintiff's said petition; that an order of sale issued in due form and time on said judgment, and said survey of land, with others, was sold thereunder by the sheriff of Tom Green County, after due and legal notice, on the first Tuesday in July, 1898, being the fifth day of said month, when the land described in plaintiff's petition was bid in by T. K. Wilson, defendant herein, with some other lands, for the sum of $3250, the amount of his bid paid, and the said sheriff executed to him a deed in due and legal form, properly acknowledged, conveying to him the title of the said Ostrander & Loomis Land & Live Stock Company, and was on the same day filed and duly recorded in Tom Green County.

"12. That on the 20th day of August, 1897, the commissioner of the general land office of Texas, acting under and by virtue of the authority conferred upon him by the act of the legislature of Texas, entitled 'An act to authorize the commissioner of the general land office to forfeit all lands heretofore sold by the State under any of the various acts of the legislature for failure to pay any portion of the interest thereon, approved March 25, 1897,' endorsed on the application of said Thomas Dolan given as aforesaid 'Land forfeited,' and caused an entry to that effect to be made on the account kept of said Thomas Dolan, purchased as aforesaid, and declared said land forfeited to the State without the necessity of reëntry or judicial ascertainment, and had said land duly and regularly reclassified under chapter 12 A, title 87, of Revised Civil Statutes of Texas of 1895 and the amendment thereto, chapter 129, General Laws of Texas of 1897.

"13. That the commissioner of the general land office did not at any time prior to the forfeit entered and declared on the 20th day of August, 1897, notify the county or district attorney of the county in which said land was situated of the failure of said Thomas Dolan or his vendees to pay any interest due on the said obligation of Thomas Dolan hereinbefore mentioned,

and neither the county nor district attorney of the county in which said land is situated caused any writ to be served upon said Thomas Dolan or his vendees or the mortgagee or beneficiaries thereunder, all of whom resided at said date in Concho and Tom Green Counties, requiring him, them, or any or either of them to show cause why he or they should not be ejected from said land, and no judgment was rendered in any court against said Thomas Dolan or any or either of his vendees or the mortgagee or beneficiary under the mortgage aforesaid awarding a writ of possession against him or them in favor of the State, and no copy of any such judgment was forwarded to the state treasurer and commissioner of the general land office, as required by section 12 of the said act approved July 8, 1879, and no proceedings whatever were had as required and provided by said section 12 of the act aforesaid, but said forfeiture was entered and declared on August 20, 1897, without any judicial proceedings whatever in any court of Texas, and no judicial proceedings of any kind or character have ever been had by the State to forfeit or rescind the sale made to Thomas Dolan, as hereinbefore set out, or to recover on or enforce his obligation given, as aforesaid, for the purchase money of said land, but said forfeiture was made under said act of March 25, 1897, and was without reëntry or judicial ascertainment and without any actual or personal notice to said Dolan or any of his vendees or to the mortgagees or beneficiaries aforesaid.

"14. The commissioner of the general land office of Texas after the forfeiture entered and declared, as aforesaid, on August 20, 1897, classified said land described in plaintiff's petition as dry grazing land, and appraised and valued the same at $1 per acre, and placed the same upon the market for sale, and notified in writing the county clerk of Tom Green County on September 11, 1897, of the valuation placed by him upon the said land, and that said land was offered for sale, which said notification was duly recorded on September 11, 1897, by the said clerk in a book for that purpose in his office; and it is agreed that in the classification, valuation and the placing of said land on the market September 11, 1897, everything was done as required and in strict compliance with chapter 12 A,

title 87, Revised Civil Statutes of Texas of 1895, and the amendment thereto, chapter 129, General Laws of Texas of 1897.

"15. That thereafter, on September 13, 1897, plaintiff J. F. Standefer, residing upon with his family and being an actual settler on said land, made his application, in writing, as required by law, and on the form adopted and prescribed by the commissioner of the general land office, to purchase said survey 42, district 11, S. P. R. R. Co., 640 acres, in Tom Green County, as an actual settler thereon, at the valuation and classification placed thereon by said commissioner, to wit, $1 per acre, as dry grazing land, and accompanied his said application with his affidavit, stating that he desired to purchase said land for a home, that he had in good faith settled thereon, and that he was not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation was interested in the purchase thereof, which said application was forwarded by said J. F. Standefer to the commissioner of the general land office, together with his obligation to the State, duly executed, binding him to pay to the State on the first day of November of each year thereafter until the whole purchase money was paid one fortieth of the aggregate price of said land, with interest, at the rate of three per cent per annum, on the whole unpaid purchase money, payable on the first day of November of each year, and upon the same day that he forwarded his application and obligation to the commissioner of the general land office he also transmitted to the state treasurer $16, being one fortieth of the aggregate purchase money for said land at $1 per acre; and thereafter on October 25, 1897, the commissioner of the general land office awarded said land to him under his said application to purchase as aforesaid and notified him on that date of said award, and the said Standefer has since said purchase paid all interest due upon his said obligation to the State and has continuously resided upon said land as a home and is now residing thereon, and he has in all things strictly complied with the said laws of 1895 and 1897 and the regulations adopted by said commissioner of the general land office.

"16. That on April 25, 1899, defendant T. K. Wilson, through

his attorneys, tendered to the state treasurer all interest and principal due on account of said Thomas Dolan purchase, as aforesaid, as is fully shown by the following certificate of said state treasurer, to wit: ' I, John W. Robbins, treasurer of the State of Texas, do hereby certify that Messrs. Hill & Wright have tendered to this department all interest and principal due on account for section No. 42, in district No. 11, S. P. R. R. Co., in Tom Green County, sold to Thomas Dolan under act of April 6, 1881, which cannot be accepted for the reason that the account for said land under said act has been forfeited for non-payment of interest to January 1, 1896. In testimony whereof I hereunto set my hand and affix the seal of office, at Austin, Texas, this the 29th day of April, 1899. John W. Robbins, state treasurer, by R. C. Roberdeau, chief clerk and acting treasurer. (Seal.)'

" And on the same day Wilson, by his attorneys, made written application to the commissioner of the general land office for a patent on said survey under said Dolan purchase, and tendered to said commissioner the patent fee of $6, and the commissioner of the general land office refused to issue said patent for the reason that it appeared from the records of his office that the sale to Thomas Dolan was made under the act of 1879 and amendment thereto of 1881, and that the Dolan purchase of this land was forfeited August 20, 1897, by the commissioner of the general land office for non-payment of interest and because this land was afterwards, on September 13, 1897, sold to J. F. Standefer.

" 17. It is further agreed that at the time of said forfeiture, August 20, 1897, the State did not pay or offer to pay to Thomas Dolan or any of his vendees the purchase money on said land or any of the interest paid on said obligation and has not since paid or offered to pay any part of said principal or interest, and the said obligation of Thomas Dolan, executed May 1, 1882, as aforesaid, has not been returned or offered to be returned to said Dolan or his vendees or said Wilson, but the same is still held and retained by the state treasurer."

On May 27, 1899, the district court entered judgment in favor of the defendant. Thereupon an appeal was taken to the Court

of Civil Appeals of the Third Supreme Judicial District of Texas, and by that court certain questions were certified to the Supreme Court of Texas viz.: "1. Did the State, through its commissioner. of the land office, without judicial proceedings, have the authority to legally declare a forfeiture of the Dolan title on account of the failure to pay the interest, as stated? 2. Are the principles of law, as decided by the Supreme Court of this State in the case of *Fristoe* v. *Blum*, 45 S. W. 998, applicable and controlling of the question certified?"

On January 15, 1900, the Supreme Court of Texas filed an opinion answering the certified questions in the affirmative, and directing that a copy of the opinion should be certified to the Court of Civil Appeals for the Third Supreme Judicial District, and that said cause be therein proceeded with in accordance with said opinion.

On February 7, 1900, the Court of Civil Appeals, in accordance with the opinion of the Supreme Court, reversed the judgment of the district court, and rendered judgment in favor of Standefer, the appellant. Thereupon a petition was filed in the Supreme Court of Texas by T. K. Wilson for a writ of error to the Court of Civil Appeals, but this application was by the Supreme Court refused. Thereafter a writ of error, bringing the cause to this court, was allowed by the Chief Justice of the Court of Civil Appeals.

*Mr. Jared W. Hill* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE SHIRAS, after making the foregoing statement, delivered the opinion of the court.

The Federal question in this case is founded upon the contention that the act of July 8, 1879, under which the land was purchased by Dolan, having provided in its twelfth section for the forfeiture of the contract of purchase, in event of default in payment of annual interest, by a judicial proceeding, such section became part of the obligation of the contract between the State

and the purchaser, which was impaired by the subsequent act of August 20, 1897, authorizing a forfeiture without judicial ascertainment or proceedings, and that therefore the proceedings under the last mentioned act were null and void, as a violation of section 10, article 1, of the Constitution of the United States.

As the Supreme Court of Texas overruled that contention, and as the Civil Court of Appeals entered the final judgment in the case in accordance with the opinion of the Supreme Court, the question is properly before us for determination.

The reasoning upon which the Supreme Court of Texas proceeded can be best presented by the following extracts from its opinion, as it appears in this record:

"The act of 1897, under which the commissioner took the action the effect of which is in question, authorized the commissioner, when any portion of the interest due by purchasers of such land has not been paid, to declare a forfeiture of the purchase without judicial aid, and gave to his action the effect of putting an end to the contract. That this statute by its terms applies to cases such as this is not disputed.

"We think it clear that all the terms of the contract between the State and a purchaser under the act of 1879 are contained in sections 6, 7, 8, 9 and 10, above outlined, and their rights, the obligations of their contract, arises from a compliance with those provisions. The contract there provided for is an executory contract of sale and purchase, which arises upon an acceptance of and compliance with the stated terms of the offer made by the State for the sale of the lands. The purchaser presents his application, makes the cash payment, causes the land to be surveyed and executes his obligation to perform the things to be done in the future. The contract then is complete, and its terms are fixed. *Jumbo Cattle Co.* v. *Bacon,* 79 Texas, 12. Both the State and the purchaser are bound so long as there is compliance with the obligation—the purchaser to make the further payments, and the State, upon completion thereof, to grant the land to the purchaser; but no title passes, and a right of rescission in the State may arise just as it might arise in an individual upon default in performance on the part of the other party.

"This right might be exercised by legislative act or by the act of some officer properly empowered thereto. The statute of 1879 does not give authority to any officer to rescind without judicial action; but the right of rescission existed in the State, and its exercise might be subsequently authorized through the lawmaking power, and an exercise of it, based upon the default of the other party, would not be a denial of any right of his. It could only be held that the right of rescission for default of the purchaser did not exist by holding that the contract provided that it should not exist, or that it should be exercised in a particular manner; but the contract embraces no such provision. There is no undertaking on the part of the State with the purchaser that the remedy prescribed in this statute, and no other, shall be pursued, unless it is to be implied from the mere presence of the provision in the statute, and we think it is well settled that no such implication arises. In the proposition often stated in the decisions that parties contract with reference to existing laws, and that such laws become a part of the contract, the reference is to those laws which determine and fix the obligation of the contract, the correlative rights and duties springing from it and not to laws of mere procedure prescribing remedies. With reference to these, there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the legislature to change them. Of course, all remedy cannot be taken away, nor can the existing remedy be so altered as to take away or impair any of the rights given by the contract as interpreted by existing law. It is also true that a specific remedy, provided by the contract itself, cannot be changed by legislation, because it constitutes a part of the contract. *Loan Co.* v. *Hardy,* 85 Tex. 610. But none of these limitations on legislative power are applicable to this legislation. The act of 1897 simply enforces a right which existed in the State from the formation of the contract. It takes away no right of the purchaser, unless it can be said that he had the right to demand that the particular remedy provided by the act of 1879 should be followed. This could only be true if the contract made that remedy exclusively applicable, which was not the case.

"That prompt payment of interest instalments was made an essential part of this contract is made very clear by the terms of the statute, as well as by its purpose, to provide available funds annually for the support of the public schools, and that a breach of his obligation to make such payment on the part of the purchaser gave the State a right to rescind, is equally clear. If the facts did not exist to authorize the action taken by the commissioner, that could be made to appear whenever such action came in question, and thus the purchaser could be deprived of no right by such action. The statute would only be taken as authorizing rescission when the right of rescission existed."

It will be observed that, in this opinion, the Supreme Court of Texas concedes that a contract of sale and purchase of land between the State and Dolan was created by the transactions as they are admitted to have taken place. It is also conceded that it was competent for the parties to have provided, as a substantive part of the contract, special remedies, each against the other, for the enforcement of their respective obligations, and that, in such a case, neither party could, without the consent of the other, resort to any form of remedy other than those stipulated for. But the court held that, in the present case, there was no undertaking on the part of the State with the purchaser that the remedy prescribed for the State in the act of 1879, and no other, should be pursued, if the purchaser should fail to comply with his part of the contract; that section 12 of the act was not a contract with purchasers, but was a general law of the State, regulating its method of procedure against delinquent purchasers, and that purchasers in default had no vested rights in the form of remedy reserved by the State in its own behalf.

We are first confronted with a question of construction. The Supreme Court of Texas having held that section 12 was a law, and not a term of a contract with a purchaser, is it open for this court to put a different construction upon the statute? It is settled law that this court, when reviewing the final judgment of a state court upholding a state enactment alleged to be in violation of the contract clause of the Constitution, possesses paramount authority to determine for itself the existence or the

non-existence of the contract set up, and whether its obligation has been impaired by the state enactment. *Jefferson Bank* v. *Skelly*, 1 Black, 436; *New Orleans Waterworks* v. *Louisiana Sugar Company*, 125 U. S. 18; *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486; *Chicago Railroad Company* v. *Nebraska*, 170 U. S. 57; *McCullough* v. *Virginia*, 172 U. S. 102.

But as the general rule is that the interpretation put on a state constitution or laws by the Supreme Court of such State is binding upon this court, and as our right to review and revise decisions of the state courts in cases where the question is of an impairment by legislation of contract rights, is an exception, perhaps the sole exception, to the rule, it will be the duty of this court, even in such a case, to follow the decision of the state court when the question is one of doubt and uncertainty. Especial respect should be had to such decisions when the dispute arises out of general laws of a State, regulating its exercise of the taxing power, or relating to the State's disposition of its public lands. In such cases it is frequently necessary to recur to the history and situation of the country in order to ascertain the reason as well as the meaning of the laws, and knowledge of such particulars will most likely be found in the tribunals whose special function is to expound and interpret the state enactments.

The legislation in question in this case is one of that general character, providing for the sale of public lands theretofore set apart for the benefit of common schools, and was enacted in twenty sections, on July 8, 1879. On April 6, 1881, an act was passed, amendatory of several of the sections of the act of 1879, but such amendments do not seem to have any important bearing on the case. On May 1, 1882, one Thomas Dolan made an application in writing to the county surveyor to purchase the land in question. Under the formalities of the statute, Dolan paid down, on June 22, 1882, the sum of $32, and gave his note, dated May 1, 1882, for the balance of the purchase money, being $608, payable in instalments with annual interest of eight per cent upon the unpaid principal. Thereafter Dolan sold and conveyed said land to one Buckley, and by successive transfers, the title of Dolan became vested, on April 4, 1888, in the Ostrander &

Loomis Land & Live Stock Company—each of the successive vendees assuming to pay the balance of the purchase money and interest, as provided in the obligation of Dolan. Said land with other tracts was mortgaged by said Land & Stock Company to the Knickerbocker Trust Company to secure the payment of $600,000. In 1892 the land company became insolvent, and in a suit in the district court of Tom Green County, to foreclose said mortgage, judgment was entered on May 17, 1898. Upon a sale on said judgment on the first Tuesday of July, 1898, the Dolan tract, with other lands, was bid in by T. K. Wilson, the plaintiff in error, for the sum of $3250, and the sheriff executed and delivered to him a deed conveying the title of the said Ostrander & Loomis Land & Live Stock Company.

On August 20, 1897, the commissioner of the general land office of Texas, acting under the act of March 25, 1897, endorsed on the application of Thoman Dolan that said land was forfeited, and restored the said land to the public domain. Thereafter J. F. Standefer, on September 13, 1897, who was then residing with his family and being an actual settler upon said land, made his application in writing to purchase said land, and on October 25, 1897, the commissioner of the land office awarded said land to him, and Standefer paid the money down and gave his obligation to pay the balance of the purchase money with interest to the State, and has since said purchase paid all interest due upon his said obligation, and has continuously resided upon said land as a home, and has in all things strictly conformed to the laws and with the regulations adopted by the commissioner of the general land office.

On April 25, 1899, T. K. Wilson, through his attorneys, tendered to the state treasurer all the purchase money and back interest due on account of the Dolan purchase, and, on the same day, demanded from the commissioner of the general land office a patent for the land. This tender and demand were refused by the officers, giving the reason that said Dolan purchase had been forfeited on August 20, 1897, for non-payment of interest, and because said land had afterwards, on September 13, 1897, been sold to J. F. Standefer.

It therefore appears that when T. K. Wilson bid in this land

the interest on the Dolan purchase was in arrears from January 1, 1896, to July, 1898, and that when he made a tender to the state treasurer, more than three years' interest was in arrears, and that, in the meantime, and before Wilson's purchase, the land had been declared forfeited and had been sold by the State for a valuable consideration to J. F. Standefer. While the agreed statement of facts shows that Wilson paid $3250 for the lands bid in by him at the sheriff's sale, it does not appear how much, if any, of that sum was on account of the Dolan tract. It seems to have been a lump sum for all the lands bought by Wilson. At the time of that sale Standefer was in actual possession of and residing on the land in dispute. It may fairly be presumed that when Wilson bid at the sheriff's sale he knew of the forfeiture and sale of the Dolan tract, for they were matters of record. But whether this were true or not, he certainly had notice of an existing outstanding title by Standefer's actual possession, a fact admitted in the agreed statement of facts.

But whatever may have been the views of the state courts as to the legal rights and equities between the parties, the sole question for our consideration is whether the Supreme Court of Texas erred in overruling the contention of the plaintiff in error that the State was precluded by contract from changing its mode of procedure in respect to purchasers in default.

There seems to be no ground for complaint by the plaintiff in error in point of equity. His counsel does, indeed, contend that he was deprived by the change of remedy of a right to have the forfeiture declared by a judicial proceeding, and that he was thereby deprived of his property without due process of law. But this argument is refuted by the fact that the only question on which he had a right to be heard was whether he had made payment in compliance with his part of the contract. By the twelfth section of the act of July, 1879, the purchaser was shut up to the defence whether he had paid the annual interest as provided for in his agreement. True he had a right to show that he had made the requisite payments, and thus defeat the forfeiture. But he had the same right and privilege under the act of March, 1897, which expressly provided that "the purchaser of said land shall have the right, at any time

within six months after such endorsement of 'Lands forfeited' to institute a suit in the district court of Travis County, Texas, against the commissioner of the general land office, for the purpose of contesting such forfeiture and setting aside the same, upon the ground that the facts did not exist authorizing such forfeiture, but if no such suit has been instituted as above provided, such forfeiture of the commissioner of the general land office shall then become fixed and conclusive; and provided, that if any purchaser shall die, or shall have died, his heirs or legal representatives shall have one year in which to make payment after the first day of November next after such death." What would have been the rights of the parties, if time had not been given by the last statute within which to contest the forfeiture evidenced by the commissioners' endorsement, is a question not now necessary to be decided.

It is apparent that the purchaser was not deprived by the act of 1897 of the right to be heard in a court of justice as to the fact of payment. His position under that act was quite as favorable as under the prior act of 1879. It is scarcely necessary to say that this court, when asked to revise proceedings in state courts, have always held that due process of law is afforded litigants if they have an opportunity to be heard at any time before final judgment is entered. *Walker* v. *Sauvinet*, 92 U. S. 90; *Davidson* v. *New Orleans*, 96 U. S. 97; *Spencer* v. *Merchant*, 125 U. S. 345; *Gallup* v. *Schmidt*, 183 U. S. 300, 307; *King* v. *Mullins*, 171 U. S. 404.

Neither Dolan nor any of the successors to his title availed of the opportunity to be judicially heard afforded by the law; and the reason for not doing so clearly appears in the admitted fact that the payments were in arrears for a considerable period of time. The tender made, if it could have had any legal effect at any time, was manifestly too late after the State had declared the forfeiture and sold the land to another.

Upon the whole, we agree with the conclusion of the Supreme Court of Texas, that no contract rights of a purchaser under the act of 1879 were impaired by the provisions of the subsequent act of 1897; that the twelfth section of the act of 1879, was not, in legal contemplation, a stipulation by the State that

the only remedy which might be resorted to by the State was the one therein provided for; that, in the language of Chief Justice Marshall, "the distinction between the obligation of a contract and a remedy given by the legislature to enforce that obligation exists in the nature of things, and without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation may direct." *Sturges* v. *Crowninshield*, 4 Wheat. 122.

The judgment of the Court of Civil Appeals for the Third Judicial District of the State of Texas is

*Affirmed.*