## AIKINS *v.* KINGSBURY, AS REGISTER OF THE STATE LAND OFFICE.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 265.   Submitted April 25, 1918.—Decided June 10, 1918.

By the law as it was when he bought, a purchaser of state lands in default as to interest on a deferred payment was liable to have his interest in the land and in the contract foreclosed by a court proceeding begun on summary notice, but subject to his right to redeem by paying interest and costs within 20 days from judgment

An act was passed declaring forfeiture in such cases in which the default had continued for five years and in which the State prior to the passage of the act had issued another certificate for the same land to a subsequent purchaser, unless all arrears of interest were paid within 6 months of its passage. *Held*, a change of remedy, not impairing the obligation of the contract of purchase.

One whose contract for the purchase of state lands had been for many years in default for nonpayment of interest both before and after the passage of a law forfeiting such contracts if the interest were not paid within a time stated, and who conceded the default and offered no excuse, *held*, not in a position to object that the law lacked due process in failing to allow time and opportunity for testing the liability to forfeiture in a court proceeding.

170 California, 674, affirmed.

THE case is stated in the opinion.

*Mr. R. P. Henshall* for plaintiff in error.

*Mr. U. S. Webb*, Attorney General of the State of California, and *Mr. Robert W. Harrison*, Deputy Attorney General of the State of California, for defendant in error.

*Mr. Fred W. Lake*, by leave of court, filed a brief as *amicus curiæ*.

MR. JUSTICE CLARKE delivered the opinion of the court.

On June 3, 1869, the State of California sold to Charles A. B. Brackett three hundred and twenty acres of school land, and delivered to him a "certificate of purchase" for it. Twenty per cent. of the purchase money was payable at the time of the purchase and the remainder "within one year after the passage of any act of the Legislature requiring such payment, or before, if desired by the purchaser."

The unpaid purchase money was to bear interest at the rate of ten per cent. per annum, payable in advance.

The purchaser paid interest to January 1, 1873, and nothing further for thirty-eight years, when, on October 26,

1911, a state official, without authority to waive the default, accepted the amount of the unpaid purchase money and interest from the plaintiff in error, as transferee of the certificate, who thereupon demanded a patent for the land, which was refused for the reason that on December 29, 1886, a certificate of purchase for the same land had been issued by the State to Michael Phillips, on which the principal and interest was paid in full on August 28, 1911.

Upon this refusal by the State, the plaintiff in error filed the petition in this case "for a writ of mandate" to compel the defendant in error, as Register of the Land Office of the State, to prepare a patent for the land in controversy and to send the same to the Governor of the State, together with a certificate that the laws had been complied with, and that he as transferee of Charles A. B. Brackett was entitled thereto. Such a suit is said by the Supreme Court of California to be "in effect an action to require specific performance on the part of the State" of the contract evidenced by the certificate of purchase.

A judgment of the Superior Court granting the prayer of the petition was affirmed by the District Court of Appeals, and this in turn was reversed by the decision of the Supreme Court of the State which is now before us for review.

In 1889 the legislature of California passed an act providing that in all cases in which a certificate of purchase of public land had been issued prior to March 27, 1872, on which arrears of principal or interest had remained due and unpaid for five years, and in which, prior to the passage of the act, the State had issued to a subsequent purchaser another certificate for the same land, the owner of the first issued certificate should be deemed to have lost the right to the land or to complete the contract for the purchase of it, unless he should pay all unpaid interest within six months from the passage of the act.

If this act is a valid law it is obvious that it cut off the plaintiff in error's transferor from all interest in the land in controversy, for the Brackett certificate was issued prior to March 27, 1872, interest on it had been due and unpaid for sixteen years, and another certificate had been issued to Phillips, when the act was passed, and nothing further was paid until 1911.

But the plaintiff in error claims that this act of 1889 is invalid because it impairs the obligation of his contract of 1869 and deprives him of his property without due process of law.

These are large claims, made in impressive terms, but in reality the only obligations of this simple contract were, that the State, on the one hand, should furnish a patent to the land when it should be paid for at the times and in the manner stipulated, and that the purchaser, on the other hand, should make payment as he had agreed to make it.

For the enforcement of the contract the law gave to the State a remedy by foreclosure, in a court proceeding, for default of the purchaser, and to the purchaser or his assigns was given the privilege to redeem at any time before the expiration of twenty days from entry of judgment of foreclosure against him.

And now, after having neglected, if not repudiated, his obligation under the contract, by failing to pay the interest due upon it for 16 years before the act was passed and for 22 years thereafter, the plaintiff in error comes complaining that the State by the Act of 1889 impaired his right under it by taking away the twenty-day period of redemption, which the prior law allowed, even though a six months' period of redemption, from the passage of the act, was substituted for it.

It is sufficient answer to this contention to say that:

The right of the State to foreclose such a contract for default in payment, and the right of the purchaser to

redeem after a default decree, relate to the remedy as distinguished from the obligation of the contract, and both of these rights are constitutionally subject to modification by the State, within limits which were not exceeded in the act before us, as is decided in *Wilson* v. *Standefer*, 184 U. S. 399, and in *Waggoner* v. *Flack*, 188 U. S. 595, which are strikingly similar in their facts and in their applicable law to the case we are considering. The right of the purchaser to redeem under the prior law was limited to paying before the expiration of twenty days from entry of default "the amount due the State and the costs of suit" and this right was modified by the Act of 1889 so as to permit redemption by paying "the interest remaining unpaid for such purchase within six months from and after the passage of this act." The notice to defendants in a suit for default under the prior law was of such a summary character that we cannot doubt that the privilege of the purchaser to redeem under the Act of 1889 is as liberal as it was before the act was passed and the change, therefore, did not deprive him of any substantial right or benefit.

It is, however, pressed upon our attention as an important difference between the Texas act involved in these cited cases and the California act before us, that the former, in terms, gives to the purchaser of public land the privilege for six months after a decree of forfeiture has been entered against him, by a designated state officer, of resorting to a court proceeding to set aside such default on the ground that it was not authorized, while no such provision is contained in the latter. It is asserted that this distinguishes the two acts, and that the absence of authority for such a court proceeding renders the California act invalid, by depriving the plaintiff in error of his property without due process of law.

It would be sufficient reply to this to say that the right to redeem after default decreed, which the purchaser had

under the California statute when his contract was made, was limited to payment of "the amount due the State and the costs of suit," and that, therefore, the Act of 1889 did not deprive him of such a privilege as the Texas act gave, of setting aside the decree in a court proceeding on the ground that it was not authorized.

But it is not important for us to consider such a question, for it is not presented in the record before us. The plaintiff in error comes admitting that for thirty-eight years he and the persons through whom he claims were in default, and, since he does not offer any excuse for such abandonment of the contract, even if the California act had contained the provision of the Texas act allowing a court review of the default def ied in it, such remedy could not have been of any avail to the plaintiff in error for he makes no case upon which he could possibly have made use of it, and he is, therefore, not in any position to attack the constitutionality of the act involved for an omission which does not injure him, and which, if supplied, would not benefit him. He who would successfully assail a law as unconstitutional must come showing that the feature of the act complained of operates to deprive him of some constitutional right. *Tyler* v. *Judges*, 179 U. S. 405; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 544; *Lehon* v. *City of Atlanta*, 242 U. S. 53, 56.

We quite agree with the Supreme Court of California that this case is ruled in all essentials by the *Waggoner Case, supra*, and this renders unnecessary the consideration of the applicability of the doctrine of laches.

The judgment of the Supreme Court of California must be

*Affirmed.*