CITY OF ATLANTIC CITY, IN THE COUNTY OF ATLANTIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. BLOCK C–11, LOT 11, DEFENDANT, AND ROSE SCHOENTHAL, APPELLANT.

Argued October 25, 1976—Decided June 9, 1977.

Conford, P. J. A. D., temporarily assigned, filed opinion concurring in the result, in which Mountain and Clifford, JJ., joined.

*Mr. Stephen Hankin* argued the cause for appellant.

*Mr. Daniel J. Dowling* argued the cause for respondent (*Mr. Murray Fredericks,* attorney).

The opinion of the court was delivered by

PASHMAN, J. This is a companion case to *Township of Montville v. Block 69, Lot 10, et al.,* 74 *N. J.* 1 (1977) decided this day. Although the landowner in this case similarly challenges the constitutionality of notice requirements embodied in the In Rem Tax Foreclosure Act, *N. J. S. A.* 54:5–104.29 *et seq.,* she also questions the applicability of that statute to her property and asserts various procedural reasons in support of her motion to reopen a final judgment of foreclosure in favor of the plaintiff, City of At-

lantic City, under the Act. Both lower courts denied her motion, and we granted certification, 69 *N. J.* 394 (1976). We affirm the denial of appellant's motion.

I

This suit involves a parcel of land designated as Block C–11, Lot 11 on the Atlantic City tax map. The Synor Company purchased the property on April 12, 1938. Although that corporation subsequently became defunct, municipal tax records have always listed the record owner of the property as "Synor Co.," with a mailing address of "Hotel Mark, 3100 Pacific Ave., Atlantic City, N. J."

The appellant, Mrs. Rose Schoenthal, filed an affidavit asserting that the property had previously been owned by her husband, Sylvan Schoenthal. She alleges that he conducted a hotel on the premises until 1960, when they were divorced. She asserts that, although no deed ever passed to her and the property technically still belongs to the defunct corporation, as "part of the divorce proceedings . . . the property in question * * * became [her] property." In support of her claim that she is the real party in interest, she states that since 1960 she has continuously dealt with the parcel as her own, paying taxes on it from 1960 to 1965. She applied for a tax deduction in her own name in 1962 and 1964, and received a refund in 1963 for an overpayment on her 1961 property tax. In 1972, appellant obtained a municipal permit and demolished the deteriorating building. Later that year she applied for and received a reduction in her building assessment from $49,100 to $25,000.

The arrearages on the property began to accumulate as early as 1965. Appellant received a notice of default with her 1967 tax bill and a warning that her property might be sold for unpaid taxes. The City did in fact conduct a tax sale of the premises on September 19, 1967, purchasing the property itself for unpaid 1966 taxes plus interest aggre-

gating $5,209.40. A tax sale certificate noting the sale was recorded on January 15, 1968.

Mrs. Schoenthal paid no part of the 1966 or any subsequent tax bills. As of November 30, 1972, the total taxes and interest due amounted to $52,579.57. She alleges that the property was worth $135,000 at that time. Appellant contends that she offered to pay $5,000 toward her tax bill on July 10, 1970, but was refused by the Deputy Tax Collector. In an answering affidavit, he denied appellant's allegations and asserted that had she offered to pay any part of the taxes, he would have referred her to the Tax Collector or the Director of Revenue and Finance.

On January 8, 1973 the City instituted *in rem* tax foreclosure proceedings to bar any rights of redemption in the property. Both the complaint in the action and the foreclosure notice listed Synor Co. as the "record owner" and the "transferee of purchaser of title." *R.* 4:64–7. This notice was published and posted in accordance with *N. J. S. A.* 54:5–104.42 and *R.* 4:64–7(b), (d). Additionally, an affidavit was filed on behalf of the City alleging that a copy of the foreclosure notice was mailed on February 24, 1973 "to each person whose name appears as an owner in the Tax Foreclosure List, at his last known address as it appears on the last municipal tax duplicate * * *."

The Chancery Division entered a final judgment of foreclosure on May 23, 1973. Claiming to have learned of the proceeding in late September, Mrs. Schoenthal filed a motion to vacate the judgment on November 3, 1973. It was denied on March 30, 1974. In an unreported opinion, the Appellate Division affirmed the trial court's denial of the motion, holding (1) that appellant had no standing to contest the foreclosure; (2) that the notice provisions of the foreclosure act were constitutional under *City of Newark v. Yeskel*, 5 *N. J.* 313 (1950), and that the City was not bound to send notice of the proceeding to her; (3) that her alleged tender of part payment, even if proven, would not have affected the validity of the proceeding; and (4) that

the Act was intended to authorize foreclosure of all real property, not just vacant land, for tax arrearages.[1]

## II

Appellant's primary argument is that she has been denied procedural due process under the foreclosure statute. As in *Montville v. Block 69, Lot 10, et al., supra,* this contention is grounded on the statute's failure to require individualized notice to taxpayers of record. However, a major difference between the facts of this appeal and those presented in that companion case turns upon the notice which was actually given to the Synor Co. as the owner of record.

Appellant in this case has made no attempt to rebut the City's assertion that it sent notice by mail to each person whose name appeared on the Tax Foreclosure List. See *ante* at 38. She concedes that title to the property has been continuously recorded in the municipal tax roles under the name "Synor Co." and that the company's address has been listed as "Hotel Mark, 3100 Pacific Avenue." However, she contends that the City made it a practice to send two sets of tax bills, one to the company at its official address and another to her at her home address. She also notes that the City was apprised of her claim to the property through her attorney's efforts to reduce the building's assessment in 1972. Thus, she argues that additional notice of the foreclosure proceeding should have been sent directly to her address or to her attorney's address.

Mrs. Schoenthal's argument goes substantially beyond the Supreme Court's holding in *Mullane,* and would place on a municipality the affirmative duty of ascertaining whether the

---

[1]Since we find no merit in each of appellant's substantive challenges to the judgment of foreclosure, we have not addressed the procedural issues which she raises: (1) that she had standing to contest the validity of the foreclosure, and (2) that it was an abuse of discretion to refuse to reopen the foreclosure after the statutory three-month period for doing so expired. *N. J. S. A.* 54:5-104.67.

name and address listed on its tax roles are correct. In *Mullane v. Central Hanover Bank & Trust Co.,* the Court recognized that administrative limitations might hamper notification efforts, and stated that "impracticable and extended searches are not required in the name of due process." 339 *U. S.* 306 at 317–18, 70 *S. Ct.* 652 at 659, 94 *L. Ed.* 865 at 875. Significantly, the Court there overruled any constitutional objections to published notice raised on behalf of persons whose interests or addresses were unknown, and limited relief to "known present beneficiaries of known place of residence." *Id. See also, Nelson v. New York,* 352 *U. S.* 103, 108, 77 *S. Ct.* 195, 198, 1 *L. Ed.* 2d 171, 175 (1956) (rejecting a similar argument that municipal authorities "should have known from the state of the records . . . that mailed notice would probably be ineffective.").

Alternatively, appellant relies on the notion that the validity of the foreclosure proceedings must be judged by the notice prescribed under the statute, and not by that which may have actually been given. Various cases have adhered to this position. *E. g., Wuchter v. Pizzutti,* 276 *U. S.* 13, 24, 48 *S. Ct.* 259, 262, 72 *L. Ed.* 446, 452 (1928) ; *Coe v. Armour Fertilizer Works,* 237 *U. S.* 413, 424–25, 35 *S. Ct.* 625, 629, 59 *L. Ed.* 1027, 1031–32 (1915) ; *Security Trust & S. V. Co. v. Lexington,* 203 *U. S.* 323, 333, 27 *S. Ct.* 87, 89, 51 *L. Ed.* 204, 208 (1906) ; *Rixner v. White,* 417 *F. Supp.* 995, 997 (D. N. D. 1976) ; *State v. Standard Oil Co.,* 5 *N. J.* 281 (1950) (Vanderbilt, J., dissenting), aff'd on other grounds, 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951) ; *Weiner v. Wittman,* 129 *N. J. L.* 35 (Sup. 'Ct. 1942). *But see, Aikins v. Kingsbury,* 247 *U. S.* 484, 489, 38 *S. Ct.* 558, 560, 62 *L. Ed.* 1226, 1229 (1918) ; *Wuchter v. Pizzutti, supra,* 276 *U. S.* at 28, 48 *S. Ct.* at 264, 72 *L. Ed.* at 453 (Brandeis, Holmes, JJ., dissenting). *But cf., Harris v. Balk,* 198 *U. S.* 215, 227, 228, 25 *S Ct.* 625, 628, 49 *L. Ed.* 1023, 1028 (1905). However, this position seems to have been abandoned by the United States Supreme Court in *Botens v. Aronauer,* 414 *U. S.* 1059, 94 *S. Ct.* 562, 38 *L. Ed.* 2d 464 (1973), dismiss-

ing appeal from 32 *N. Y.* 2d 243, 344 *N. Y. S.* 2d 892, 298 *N. E.* 2d 73 (1973). Although the latter case involved a challenge to a statute which prescribed only published notice, it was dismissed for want of a substantial federal question because, as here, notice by mail was actually sent. See *Montville v. Block* 69, *Lot* 10, *et al.,* 74 *N. J.* at 1.

Furthermore, the principal case upon which appellant relies — *Wuchter v. Pizzutti, supra* — involved a scheme which failed to make any provision for constitutionally adequate notice. Thus, the Court was able to say that since the notice which was actually given in that case was not contemplated by the statute, it could not "supply constitutional validity to the statute or to service under it." 267 *U. S.* at 24, 48 *S. Ct.* at 262, 72 *L. Ed.* at 452; Apparently, the Court concluded that the failure to provide anywhere for adequate notice was a jurisdictional defect which made the lower court's judgment in that case void. See *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 492–93 (1952). Jurisdiction in the present case, however, may be sustained under the Court Rule governing notice in foreclosure actions, *R.* 4:64–7 (c). Though this provision may be only directory, it is sufficient to support the judgment of foreclosure below since notice was actually mailed to the address listed on the tax records.

### III

Finally, we address appellant's contentions that the In Rem Tax Foreclosure Act did not apply to the property in question, and that her offer to pay part of her taxes in July 1970 prevented the municipality from foreclosing her right of redemption.

The suggestion that the Act authorizes the foreclosure of liens only on vacant land is clearly without merit. Her argument, which is based on earlier drafts of the present legislation, fails to explain satisfactorily why the explicit language of the statute should not be followed. *N. J. S. A.* 54:5–104.35

empowers a municipality to foreclose *"any* of the tax sale certificates held by it." [Emphasis added.] Furthermore, it states that the municipality shall list the "lands" against which the proceedings are instituted, specifically defining "land" to include "all real property." We note that this same argument was considered and rejected by the court in *Newark v. Block 86, Lot 30, et al.,* 94 *N. J. Super.* 468 (Ch. Div. 1967).

■ Reliance on appellant's alleged tender of $5000 to reduce the arrearages is equally unhelpful. Essentially, she argues that by offering to pay a part of her taxes on July 10, 1970 she prevented the municipality from lawfully instituting foreclosure proceedings on January 8, 1973. This argument is based upon *N. J. S. A.* 54:5–104.35, which under a previous version, prohibited a municipality from instituting a foreclosure action if any part of the taxes assessed against the land had been paid within the last four years.

In 1968, however, the statute was amended to allow foreclosure proceedings to be instituted where *"any portion* of the general land taxes levied and assessed against the land for 48 months next preceding the commencement of the action . . . *remains unpaid." L.* 1968, *c.* 464. [Emphasis added.][2] This provision became effective on February 21, 1969, well before the instant action was instituted. Since her alleged tender could hardly have satisfied all of her tax obligations for the requisite time period, see *ante* at 37–38, we need not consider whether the Appellate Division was correct in refusing to equate a tender of part payment with a tax payment under the statute. Moreover, we need not consider whether the alleged tender ever occurred.

The judgment of the Appellate Division is hereby affirmed.

CONFORD, P. J. A. D., Temporarily Assigned, concurring in result. In this case the Court denies appellant the right of

---

[2]Although of no significance to the arguments in this case, *N. J. S. A.* 54:5–104.34, was amended again by *L.* 1974, *c.* 91, § 5, this time reducing the time period to 21 months.

redemption from a tax foreclosure judgment of certain realty beneficially owned by her notwithstanding that it has, in a companion case decided today,[1] held the In Rem Tax Foreclosure Act (1948), *N. J. S. A.* 54:5–104.29 *et seq.,* unconstitutional to the extent that it does not require mailing of notice of the foreclosure to the person last shown as owner on the city's tax records. The Court so rules on the ground that, according to the record in this case, notice was in fact mailed to the corporation which was the taxpayer of record at the address of record. The Court rejects appellant's argument that under the leading case of *Wuchter v. Pizzutti,* 276 *U. S.* 13, 24, 48 *S. Ct.* 259, 262, 72 *L. Ed.* 446 (1928), due process will be held to have been denied if proper notice is not commanded by the applicable statute although in fact actually given. The Court considers that the *Wuchter* rule has been abandoned by the United States Supreme Court p. 41.

I doubt whether the Court has satisfactorily dissipated the *Wuchter* bar against denial of relief to appellant consistent with its adjudication of the invalidity of our *In Rem* tax foreclosure statute on due process grounds. But I need not come to a conclusion on the point as I disagree with the Court's decision on the matter of the constitutionality of the statute for the reasons set forth at length in my dissenting opinion in the *Township of Montville* case. As I deem the statute entirely unexceptionable and as it was followed in the present case in respect of publication and posting of notice, I regard appellant's position in this regard as without merit.

Appellant's other points are without merit.

As to the contention that the act authorizes foreclosure only on vacant lands, I concur in the Court's disposition of the point.

Appellant also argued in the lower courts that since she had tendered $5,000 on account of the arrearages on July 10, 1970, the institution of the foreclosure on January 8, 1973

---

[1]*Township of Montville v. Block 69, Lot 10,* etc.

violated the asserted requirement of *N. J. S. A.* 54:5–104.34 that all taxes assessed against the land for the four years preceding the commencement of the action be unpaid. Appellant's affidavit averred that she visited the tax office to make payment of taxes on another property she owned (her brief fixes the date as July 10, 1970) and tendered $5,000 on account of the arrearages on the subject property. This was refused by a Mr. Burns who said that full payment was required. Mr. Burns, Deputy Tax Collector, filed an answering affidavit denying any tender by appellant of any sum. He stated that the established practice, in the event of a tender of part payment, would have been for him to refer the request to the Tax Collector or the Director of Revenue and Finance.

In my view of the applicable law, appellant's contention has no substance even if her assertion of tender of part payment is accepted as true. In the first place, *N. J. S. A.* 54: 5–104.34 was amended by *L.* 1968, *c.* 464 to preclude institution of the action "unless * * * [a]ll or any portion of the general land taxes levied and assessed against the land for 48[2] months next preceding the commencement of the action * * * remains unpaid." Since realty taxes are payable quarterly on the first days of February, May, August and November of the current year, after which they are delinquent, *N. J. S. A.* 54:4–66, institution of the instant foreclosure on January 8, 1973 would have been precluded, insofar as the applicable section is concerned, only if part or all of the quarterly tax obligations due for each of the 16 quarters preceding January 8, 1973 (date of institution of the foreclosure) was unpaid on that date. The sixteenth preceding quarterly obligation was that due November 1, 1968.

Assuming the city had accepted appellant's tender of $5,000 in July 1970 it would have been the city's right and

---

[2]The figure "48" was changed to "21" by amendment in *L.* 1974, *c.* 91, sec. 5.

duty to apply the payment first to the tax obligation for which the tax sale took place, *i.e.,* the lien for 1966. *N. J. S. A.* 54:5–58; *cf. State v. Erie Railroad Co.,* 23 *N. J. Misc.* 203, 212 (Sup. Ct. 1945). This amounted to $5,209.40 plus additional interest as of July 10, 1970 of $1,167.95, or a total of $6,377.35. The alleged tender of $5,000 was obviously insufficient even to discharge the 1966 obligation, much less those for any of the tax quarters owing on and after November 1, 1968. The position of the appellant in this regard is thus undermined even if one accepted her affidavit as true. There is the further consideration that the only express provision in the statutes authorizing part payment on account of delinquent taxes is that set forth in *N. J. S. A.* 54:5–19, which permits a municipality by resolution to agree to accept payment of delinquencies in installments over five-year periods. No such resolution was ever adopted as to this property.

Justice MOUNTAIN and Justice CLIFFORD join in this opinion.

MOUNTAIN and CLIFFORD, J. J., and Judge CONFORD concurring in the result.

*For affirmance* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD — 7.

*For reversal* — None.