## HIRSH v. BLOCK.

(Court of Appeals of District of Columbia. Submitted May 4, 1920. Decided
June 2, 1920.)

No. 3372.

1. **Constitutional law** ⊜⟶46(3)—**Pursuance of remedy before commission created by unconstitutional act unnecessary.**

A landlord may bring an action for possession at the termination of a lease, and assert the unconstitutionality of the remedy prescribed in Act Oct. 22, 1919, known as the "Ball Rent Law," as a reason for not proceeding thereunder and taking an appeal from the commissioners, if unsuccessful before them.

2. **Constitutional law** ⊜⟶43(2)—**Proceeding under unconstitutional statute estops one from claiming unconstitutionality.**

If a landlord invoked the aid of the "Ball Rent Law," and suffered defeat before the rent commission, he would estop himself to seek further relief on the ground of the unconstitutionality of the act.

3. **Landlord and tenant** ⊜⟶94(2)—**No notice required for removal at expiration of lease.**

At the expiration of a time lease, no notice is required on the part of the landlord to acquire possession.

4. **Statutes** ⊜⟶63—**Unconstitutional act a nullity.**

An unconstitutional act is not a law, confers no right, affords no protection, creates no office, and is, in legal contemplation, as inoperative as though it had never been passed.

5. **Constitutional law** ⊜⟶251—**Constitutional guaranties as to property rights in operation in District of Columbia.**

The Constitution, guaranteeing life, liberty, and property, is uniform in operation throughout the United States, and includes the District of Columbia.

6. **Constitutional law** ⊜⟶278(1)—**Landlord and tenant** ⊜⟶180½ **New, vol. 11A Key-No. Series—Ball Rent Law unconstitutional, as depriving landlord of property without due process of law.**

The Ball Rent Law, giving tenants the right to occupy premises after the termination of a lease, rental to be fixed by a rent commission, permits the taking of property without due process of law, and is within the inhibition of Const. Amend. 5; the right of reversion being a property right, of which the landlord cannot be divested, except by due process of law, and the landlord being powerless to have a review of the facts on which the action of the commission is based.

7. **Eminent domain** ⊜⟶2(1)—**Ball Rent Law does not provide for taking of property for public use.**

The Ball Rent Law, providing that a tenant may remain in possession after expiration of his lease, rent commission to fix rents, does not provide for the taking of private property for public use, but for the taking of the property of one citizen for another.

8. **Landlord and tenant** ⊜⟶182—**No legislative power to fix rental rates as between private persons.**

The power to fix rental rates between private individuals is not analogous to or controlled by the decisions which have upheld the power of the Legislature to fix rates for service where the owner has devoted the business affected to a public use.

9. **Constitutional law** ⊜⟶81—**Renting of property to government employé private business.**

The renting of property in the District of Columbia is a private business, whether the tenant be an employé of the government or not.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Constitutional law ⟜81—Private business cannot be made public merely by legislative fiat.**

A private business cannot be made public, or be impressed with a public interest, merely by legislative fiat.

**11. Constitutional law ⟜81—Property cannot be divested by arbitrary exercise of police power.**

Property rights cannot be divested by an arbitrary exercise of the police power.

**12. Constitutional law ⟜45—Judiciary may restrain law-making power within constitutional limitations.**

The power resides in the judiciary to restrain the law-making power within constitutional limitations.

**13. Jury ⟜31(1)—Ball Rent Law invalid, as deprivation of right to trial by jury.**

Ball Rent Law, providing that a tenant in the District of Columbia may remain in possession after the termination of his lease, rent to be fixed by the rent commission, is invalid, because it deprives the parties of right of trial by jury, since a finding of fact by the commission is binding and conclusive on the court and the parties, thus foreclosing the intervention of a jury.

**14. Eminent domain ⟜1—War ⟜4—Constitution as to taking private property not superseded by declaration of war; Ball Rent Law unconstitutional, though Congress declared it necessary by reason of war.**

Ball Rent Law, giving tenants right to possession after termination of lease, and by section 122 declaring that the provisions of the act were made necessary by emergencies growing out of the war with Germany, etc., amounted merely to a statement of the inducement or reason for the enactment, and could not render the act valid; the Constitution not being superseded by a declaration of war, the only exception to the rule that, in the case of "war emergency," private property must be taken under the power of eminent domain, being where private property may be impressed into the public service, or seized for a public use, by a military officer in the field, either to prevent it from falling into the hands of the public enemy, or for the use of the army to meet an immediate and pressing necessity, in which case the government is bound to make full compensation.

**15. Constitutional law ⟜70(3)—Wisdom of act providing for taking property by eminent domain matter for Legislature.**

In the exercise of the power of eminent domain, Congress has the power to designate the public use for which private property may be taken, and, if found by the court to be in fact a public use, the courts are then powerless to question the wisdom of the legislative decision.

**16. Eminent domain ⟜67—Courts not estopped by legislative declaration from inquiring into nature of use of property to be taken.**

Courts are not estopped by any legislative declaration from inquiring into the nature of the use, to determine whether the purpose for which property is taken is in fact public or private.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Landlord and tenant proceeding by Louis Hirsh against Julius Block, carrying on business under the name and style of White's. From a judgment in favor of defendant, plaintiff appeals. Reversed and remanded.

Certiorari denied 254 U. S. ——, 41 Sup. Ct. 13, 65 L. Ed. ——.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Myer Cohen, R. D. Daniels, and W. G. Johnson, all of Washington, D. C., for appellant.

Julius I. Peyser, Geo. E. Edelin, Theo. D. Peyser, and J. C. Adkins, all of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice. This is a landlord and tenant proceeding brought by appellant, Hirsh, plaintiff below, in the municipal court of the District of Columbia, to recover possession of certain premises held by defendant, Block, under a three year lease, which terminated on the 31st day of December, 1919.

It appears that on November 12, 1919, the owners of the reversion, Mary A. Cushing and Isabella Varney, conveyed the property in question by deed to one Sylvan J. Luchs, who, on the same day, conveyed it in fee simple to plaintiff, Hirsh. The lease was duly assigned to plaintiff. Plaintiff authorized his agents to collect from the defendant the rent accruing to the termination of the lease, the 31st day of December, 1919, which rent was paid. On December 15, 1919, plaintiff notified defendant that he had purchased the property and would require possession at the expiration of the lease.

Defendant refused to vacate; hence this proceeding. From a judgment in favor of defendant in the municipal court, plaintiff appealed to the Supreme Court of the District of Columbia, where he filed an affidavit of merit under rule 19, in which he set forth, among other things:

"That he is a bona fide purchaser of the said real property for his own occupancy and requires and intends to occupy and to use the same himself for the conduct therein of the business of retail selling of men's furnishings and similar merchandise."

An affidavit of defense was filed by defendant, in which he denied plaintiff's right to possession of the premises by reason of the termination of the lease, claiming that under the Ball Rent Law the lease is continued in force and he is entitled to remain in possession of the premises, notwithstanding the expiration of the term fixed by the lease, and alleged that plaintiff purchased the premises and took conveyance thereof subject to the rights of the defendant under the act. It is further averred that plaintiff is required by the act to give a 30-day notice in writing, served in the manner provided by section 1223 of the District Code, which notice has not been served, though it is made mandatory under the provisions of the act. On hearing, the court denied the motion of plaintiff for judgment, and entered judgment in favor of defendant, from which this appeal is prosecuted.

This case involves the constitutionality of the act of Congress of October 22, 1919 (41 Stat. 298), known as the "Ball Rent Law." The act provides for the appointment of a rent commission, consisting of three persons, who are vested with absolute jurisdiction over landlords and tenants, the fixing of rents, and the continuing and making of leases within the District of Columbia for a period of two years, unless the act is sooner repealed by Congress. The only check upon the power of the commission is a restricted right of appeal to the Court of Appeals of the District of Columbia, in which "the commission's determination

shall not be modified or set aside by the court, except for error of law." The act provides that the appeal shall in no manner operate as a supersedeas or stay to postpone the enforcement of the determination of the commission appealed from, and, if any finding of the commission is modified as the result of the appeal, or set aside, the difference between the amount of rent pending appeal and the amount which should have been paid under the final judgment in the case may be recovered by suit in the municipal court of the District of Columbia.

The act declares rental property, hotels and apartments, "affected with a public interest, and that all rents * * * shall be fair and reasonable; and any unreasonable or unfair provision of a lease * * * is hereby declared to be contrary to public policy." The commission, on complaint of either the landlord or tenant, or on its own motion, is empowered to inquire into and determine whether the terms and conditions of any lease are fair and reasonable: Provided, however, that the landlord cannot make complaint when the tenant is in possession under an unexpired lease. On hearing, if the commission finds that the rent or terms of the lease are unreasonable or unfair, it shall determine and fix a—

"fair and reasonable rent or charge therefor, and fair and reasonable service, terms, and conditions of use or occupancy. In any suit in any court of the United States or the District of Columbia involving any question arising out of the relation of landlord and tenant with respect to any rental property, apartment, or hotel, except on appeal from the commission's determination as provided in this title, such court shall determine the rights and duties of the parties in accordance with the determination and regulations of the commission relevant thereto."

The act also provides that—

"The right of a tenant to the use or occupancy of any rental property, hotel or apartment, existing at the time this act takes effect, or thereafter acquired, under any lease or other contract for such use or occupancy or under any extension thereof by operation of law, shall, notwithstanding the expiration of the term fixed by such lease or contract, continue at the option of the tenant, subject, however, to any determination or regulation of the commission relevant thereto; and such tenant shall not be evicted or dispossessed so long as he pays the rent and performs the other terms and conditions of the tenancy as fixed by such lease or contract, or in case such lease or contract is modified by any determination or regulation of the commission, then as fixed by such modified lease or contract. All remedies of the owner at law or equity, based on any provision of any such lease or contract to the effect that such lease or contract shall be determined or forfeited if the premises are sold, are hereby suspended so long as this title is in force. Every purchaser shall take conveyance of any rental property, hotel, or apartment subject to the rights of tenants as provided in this title." (Section 109.)

The act then provides that the bona fide owner of rental property shall have the right of possession for his own use and occupancy upon giving 30 days' notice, as provided in section 1223 of the District Code, which notice shall contain a statement of the facts upon which it is based. In case there is a dispute between the landlord and tenant as to the accuracy or sufficiency of the statement, the matters in dispute shall, upon complaint, be determined by the commission.

The act vests the commission with power to subpœna and compel the

attendance of witnesses and the production of records, to fix rental rates retroactively to take effect from the date of filing the complaint, to prescribe the procedure to be followed in all proceedings under its jurisdiction, and to prescribe standard forms of leases and contracts to be used in renting property, with the provision that any lease or contract made after the form has been prescribed, regardless of its provisions, shall be interpreted, applied, and enforced by the commission, or any court of the United States or the District of Columbia, "in the same manner as if it were in the form and contained the stipulations of such standard form."

Heavy penalties are prescribed for the collection of rent in excess of the amount fixed by the commission, or for the collection of any bonus or other consideration in addition to the fixed rental, and the assignment of leases or subletting of leased premises at a greater rental than that paid under the lease is forbidden, except by permission of the commission.

[1-4] The right of plaintiff to question the constitutionality of the act in this proceeding is assailed. It is urged that he should have pursued the remedy prescribed in the act, and, if unsuccessful, appeal. But plaintiff would be in poor position to question the jurisdiction which he had himself invoked, merely because of an adverse decision. If he should invoke the aid of the statute, and suffer defeat before the commission, he would estop himself to seek further relief on the ground of the unconstitutionality of the act. He would not be permitted to thus experiment with the law. Electric Co. v. Dow, 166 U. S. 489, 17 Sup. Ct. 645, 41 L. Ed. 1088; Wight v. Davidson, 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; Shepard v. Barron, 194 U. S. 553, 24 Sup. Ct. 737, 48 L. Ed. 1115; Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187; Grand Rapids, etc., Ry. Co. v. Osborn, 193 U. S. 17, 24 Sup. Ct. 310, 48 L. Ed. 598. The sole defense interposed is the present act. If it is valid, the defense is complete, since the 30-day notice required by the act was not given, and the proceedings could only be had before the commission. If the act is void, it furnishes no defense; since, under existing law, at the expiration of a time lease, no notice is required, and the proceedings to acquire possession must be brought, as in this case, in the municipal court of the District.

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County, 118 U. S. 425, 442, 6 Sup. Ct. 1121, 1125 (30 L. Ed. 178).

[5] Coming to the validity of the act, we have held in the recent case of Willson v. McDonnell, 49 App. D. C. 280, 265 Fed. 432, considering an act of Congress similar to the one before us, that the provisions of the Constitution which protect persons and property are uniform in their operation throughout the United States. In this respect, there is no distinction between the District of Columbia and the states of the Union.

"There is nothing in the history of the Constitution or of the original amendments to justify the assertion that the people of this District may be lawfully deprived of the benefit of any of the constitutional guaranties of life,

liberty, and property." Callan v. Wilson, 127 U. S. 540, 550, 8 Sup. Ct. 1301, 1304 (32 L. Ed. 223).

[6] But what are the rights of which plaintiff has been divested, if the present act is held to constitute a valid defense to his action for possession? Plaintiff had a vested estate and reversion in fee in the property in question to come into possession on January 1, 1920. Defendant's right of possession terminated on December 31, 1919, by the express terms of his lease, a contract valid and existing when this act was passed. This right of reversion is a property right, of which plaintiff cannot be divested, except by due process of law. The act gives defendant the option of retaining possession of the property at the rental fixed in the lease, which is continued in force; or, if dissatisfied, he may apply to the commission for a reduction of the rent. If reduced by the commission, plaintiff is powerless to have a review of the facts upon which the action of the commission is based. Not only is plaintiff denied any remedy for this continued detention of his property, but he is forbidden to sell his property, except subject to and burdened by the option of the tenant. It would seem, therefore, that if the property clauses of the Constitution are longer to have any restraining power over Congress, the case here presented is one within the inhibition of the Fifth Amendment.

[7] Nor does this amount to the taking of private property for public use. Plaintiff and defendant are private citizens, engaged in private business. If the government needed the use of this property for the better conduct of the war, it had a remedy, plain and adequate, by the exercise of the power of eminent domain. But, as was said by Mr. Justice Story, speaking for the court in Wilkinson v. Leland, 2 Pet. 627, 658 (7 L. Ed. 542):

"We know of no case, in which a legislative act to transfer the property of A. to B., without his consent, has ever been held a constitutional exercise of legislative power, in any state in the Union. On the contrary, it has been constantly resisted, as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced."

[8] The power to fix rental rates between private individuals is not analogous to nor controlled by the decisions which have upheld the power of the Legislature to fix rates for service where the owner has devoted the business affected to a public use. In Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, the owner of the grain elevator had for years devoted it to a public use in handling grain for the public generally. The court, upholding the power of the Legislature of Illinois to fix rates for the service thus rendered the public, announced the rule authorizing this exercise of legislative power, as follows:

"To limit the rate of charge for services rendered in a public employment, or for the use of property in which the public has an interest, is only changing a regulation which existed before. It establishes no new principle in the law, but only gives a new effect to an old one."

The same principle runs through the Railroad Rate Cases, the Insurance Case (German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189), the Bank Guaranty Decision (Noble State Bank v. Haskell, 219 U. S. 104, 31 Sup. Ct. 186,

55 L. Ed. 112, 32 L. R. A. [N. S.] 1062, Ann. Cas. 1912A, 487), the Irrigation Cases (Clark v. Nash, 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171, and Strickley v. Highland Boy Mining Co., 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174), the Wharf Case (Weems Steamboat Co. v. People's Steamboat Co., 214 U. S. 345, 29 Sup. Ct. 661, 53 L. Ed. 1024, 16 Ann. Cas. 1222) and the Pipe Line Case (Producers' Transp. Co. v. Railroad Commission, 251 U. S. 228, 40 Sup. Ct. 131, 64 L. Ed. ——).

In no case where the legislative power to regulate and fix rates has been upheld has the power to continue existing contracts in force after the time fixed by the parties for their termination, or to require the owner of the property to continue the business, been sustained. In the Noble Bank Case, supra, the court held, on petition for rehearing (219 U. S. 575, 31 Sup. Ct. 299, 55 L. Ed. 341), that, if the law was obnoxious to any one engaged in the banking business, "the payment can be avoided by going out of the banking business, and is required only as a condition of keeping on, from corporations created by the state." But in the present case the landlord is not only prevented from going out of the renting business, but is required to continue it upon the terms fixed by the act.

[9-12] The renting of property in the District of Columbia is a private business, whether the tenant be an employé of the government or not. A private business cannot be made public, or impressed with a public interest, merely by legislative fiat. A public interest cannot be thus created, or property rights be divested, by an arbitrary exercise of the police power. In both instances, the power resides in the judiciary to restrain the law-making power within constitutional limitations. In the Producers' Transportation Case, Mr. Justice Van Devanter, speaking for the court, said:

"It is, of course, true that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts, and never was devoted by its owner to public use—that is, to carrying for the public—the state could not, by mere legislative fiat or by any regulating order of a commission, convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment."

[13] More potent still, as affecting the constitutionalrty of the present act, is the fact that landlords and tenants in the District of Columbia are, by its express terms, deprived of the right of trial by jury in cases involving the right to possession of real estate. Though a writ undoubtedly may be obtained in the municipal court upon the determination of the rent commission that the owner is entitled to possession, the finding of fact by the commission is binding and conclusive upon the court and the parties, which, of course, forecloses the intervention of a jury. In Whitehead v. Shattuck, 138 U. S. 146, 151, 11 Sup. Ct. 276, 277, 34 L. Ed. 873, the court, holding that the action for the recovery of possession of real estate is at law, and not by suit in equity, said:

"The Seventh Amendment of the Constitution of the United States declares that 'in suits at common law, where the value in controversy shall exceed

twenty dollars, the right of trial by jury shall be preserved.' * * * The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury."

[14] Section 122 of the act provides as follows:

"It is hereby declared that the provisions of this title are made necessary by emergencies growing out of the war with the Imperial German government, resulting in rental conditions in the District of Columbia dangerous to the public health and burdensome to public officers and employés whose duties require them to reside within the District and other persons whose activities are essential to the maintenance and comfort of such officers and employés, and thereby embarrassing the federal government in the transaction of public business. It is also declared that this title shall be considered temporary legislation, and that it shall terminate on the expiration of two years from the date of the passage of this act, unless sooner repealed."

A similar statement was contained in the Saulsbury Resolution (40 Stat. 593). In the Willson Case, holding the resolution void, we said:

"The Constitution is not superseded by a declaration of war, and experience has demonstrated that ample provision may be made for 'the national security and defense' without overstepping its limitations."

And Mr. Justice Brandeis, in the recent case of Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. ——, said:

"The war power of the United States, like its other powers and like the police power of the states, is subject to applicable constitutional limitations."

The declaration here amounts merely to a statement of the inducement or reason for the enactment of the statute. It affects no change in the method of acquiring private property for public use. It adds nothing to the constitutional power of Congress. The only exception to the rule that, in the case of "war emergency," private property must be taken under the power of eminent domain, is where private property may be impressed into the public service, or seized for a public use, by a military officer in the field, either to prevent it from falling into the hands of the public enemy, or for the use of the army to meet an immediate and pressing necessity. But this is taking for public use, and not for private use. Such action, however, is only justified where the emergency is too great to admit of delay to await the sanction of the civil authorities. In all such cases, the government is bound to make full compensation. Mitchell v. Harmony, 13 How. 115, 14 L. Ed. 75.

[15] Nor can Congress, by a mere legislative declaration, convert a private use into a public use; nor, by such a declaration, create an arbitrary exercise of the police power, or make an act constitutional which otherwise would be unconstitutional. Undoubtedly, in the exercise of the power of eminent domain, Congress has the power to designate the public use for which private property may be taken, and, if found by the courts to be, in fact, a public use, the courts are then powerless to question the wisdom of the legislative decision.

"The adjudicated cases likewise establish the proposition that while the courts have power to determine whether the use for which private property is

authorized by the Legislature to be taken, is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made." Shoemaker v. United States, 147 U. S. 282, 298, 13 Sup. Ct. 361, 390 (37 L. Ed. 170).

[16] And the courts are not estopped by any legislative declaration from inquiring into the nature of the use to determine whether it is, in fact, public or private.

"The nature of the use for which land is to be taken necessarily appears on the face of the proceeding; and, if it is not a public one, the condemnation cannot be sustained, no matter what the Legislature may have declared." Coe v. Aiken (C. C.) 61 Fed. 24, 32.

In Palairet's Appeal, 67 Pa. 479, 5 Am. Rep. 450, the court considered an act of the Legislature of Pennsylvania in which it was attempted to extinguish irredeemable rents. The act provided for just compensation to be fixed by a jury, and, as here, contained a declaration of public use as a matter of public policy. Mr. Justice Sharswood, in an able opinion, declaring the act unconstitutional, said:

"No doubt the right of eminent domain, being for the safety and advantage of the public, overrides all rights of private property. But for what public use has this estate of the appellants been taken and applied? It has been contended, as the preamble of the act declares, that 'the policy of this commonwealth has always been to encourage the free transmission of real estate, and to remove restrictions on alienation, so that it is, and is hereby declared to be, necessary for the public use to provide a method of extinguishing such irredeemable rents, having a due regard for private rights.' But if this is the kind of public use for which a man's property can be taken, there is practically no limit * * * to the legislative power. It would result that, whenever the Legislature deem it expedient to transfer one man's property to another upon a valuation, they can effect their object."

In other words, whatever power Congress may possess to take private property for a public use upon just compensation, it has no power, under any circumstances, to take private property for a private use, as is attempted under the present act. Here, however, the individual litigant invokes the aid of the statute, not for the public use, but for his own private benefit. Though Congress may have had power, in the exercise of the right of eminent domain, as a war emergency, to take over rental property in the District of Columbia, to devote it to the public use of accommodating its employés and officials, it has not power to take the private property of one individual and turn it over to the use of another private individual. As we said in the Willson Case:

"In the present case, for example, by the exercise of the power of eminent domain, the government might have checked and thwarted any tendency on the part of landlords toward extortion, and, at the same time, have satisfied the due process clause of the Constitution."

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SMYTH, Chief Justice (dissenting). Being unable to unite with my Associates in the conclusion which they have reached in this case, I think it proper to state as briefly as may be the reasons for my position:

First. Block's lease of the property expired December 31, 1919. Hirsh became the owner of the property November 12, 1919; therefore in ample time to give Block 30 days' notice, as prescribed by the Ball Act, before his term expired. Hirsh brought his action for possession in the municipal court, saying, in the words of the record:

"That he is a bona fide purchaser of the said real property for his own occupancy and requires and intends to occupy and to use the same himself."

Judgment went against him. He appealed to the Supreme Court of the District, and in his affidavit of merit repeated the allegation just quoted. Under rule 19 of that court he filed a motion for judgment on the ground that the affidavit of defense filed by Block was insufficient. The motion was overruled and judgment given for the defendant.

The Ball Act provides:

"The rights of the tenant under this title shall be subject to the limitation that the bona fide owner of any rental property, apartment, or hotel shall have the right to possession thereof for actual and bona fide occupancy by himself, or his wife, children, or dependents, * * * upon giving thirty days' notice in writing, served in the manner provided by section 1223 of the Act entitled 'An act to establish a Code of Laws for the District of Columbia,' approved May 3, 1901, as amended, which notice shall contain a full and correct statement of the facts and circumstances upon which the same is based," etc.

Therefore, if Hirsh's allegation with respect to being a bona fide purchaser of the property for his own use is true, he would be awarded possession under the act by the commission, for we must assume that it would correctly decide the case. Shreveport v. Cole, 129 U. S. 36, 42, 9 Sup. Ct. 210, 32 L. Ed. 589; Strother v. Lucas, 12 Pet. 410, 9 L. Ed. 1137; Boley v. Griswold, 20 Wall. 486, 488, 22 L. Ed. 375; Butler v. Maples, 9 Wall. 766, 19 L. Ed. 822. Should the tenant refuse to yield possession, Hirsh could apply to the municipal court for the proper writ, and the commission's determination under section 106 of the act would be conclusive of the "rights and duties" of the tenant, and a writ for possession would necessarily follow. Therefore, if he had pursued the course outlined in the act, he would have received complete relief, provided he gave the required 30 days' notice. According to the law existing prior to the approval of the act, he would not have been required to give such notice. Does this render the act unconstitutional?

The requirement with respect to the notice affects the remedy only. It does not touch the contractual rights of the parties. There is a wide difference between the obligation of a contract and the remedy for its enforcement. This has been the law at least since Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529. In that case Chief Justice Marshall said:

"The distinction between the obligation of a contract, and the remedy given by the Legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

In a later case the same court said:

"But it is equally well settled that changes in the forms of action and modes of proceeding do not amount to an impairment of the obligations of a contract, if an adequate and efficacious remedy is left." Antoni v. Greenhow, 107 U. S. 769, 774, 2 Sup. Ct. 91, 95 (27 L. Ed. 468).

To the same effect are Tennessee v. Sneed, 96 U. S. 69, 74, 24 L. Ed. 610; Wilson v. Standefer, 184 U. S. 399, 416, 22 Sup. Ct. 384, 46 L. Ed. 612; Waggoner v. Flack, 188 U. S. 595, 604, 23 Sup. Ct. 345, 47 L. Ed. 609; and Aikins v. Kingsbury, 247 U. S. 484, 488, 38 Sup. Ct. 558, 62 L. Ed. 1226.

According to the judgment of Congress the remedy in the case before us was modified; but that was legitimate, and did not make the act invalid.

It is asserted by Hirsh, and in effect repeated in the majority opinion, that the law insured him the unrestricted right of alienation of his property, the right to confer upon his alienee the right of possession without any claim or charge upon it, the right to relet the property to another tenant upon such terms as may be agreeable to him, without let or hindrance from Block, and that the act deprives him of these rights. The ready answer to these contentions is that he does not seek by his pleading the right to sell or relet his property. He asks only that he be given possession of it for his own occupancy, and, as I have just pointed out, the act furnishes him a direct and effective means by which to get it. It will be time enough to adjudicate the other rights when they properly arise. Of a situation quite similar to the one we are considering, the Supreme Court of the United States said:

"This is an effort to test the constitutionality of the law, without showing that the plaintiff had been injured by its application, and in this particular the case falls within our ruling in Tyler v. Judges of Registration, 179 U. S. 405, wherein we held that the plaintiff was bound to show he had personally suffered an injury before he could institute a bill for relief. In short, the case made by the plaintiff is purely academic." Rurpin v. Lemon, 187 U. S. 51, 60, 23 Sup. Ct. 20, 24 (47 L. Ed. 70.)

In a more recent case (Hatch v. Reardon, 204 U. S. 152, 160, 27 Sup. Ct. 188, 190, 51 L. Ed. 415, 9 Ann. Cas. 736), the same court said:

"But there is a point beyond which this court does not consider arguments of this sort for the purpose of invalidating the tax laws of a state on constitutional grounds. This limit has been fixed in many cases. It is that unless the party setting up the unconstitutionality of the state law belongs to the class for whose sake the constitutional protection is given, or the class primarily protected, this court does not listen to his objections, and will not go into imaginary cases, notwithstanding the seeming logic of the position that it must do so, because if for any reason, or as against any class embraced, the law is unconstitutional, it is void as to all."

In another case one Collins, an osteopath, was arrested for violating a law of Texas prohibiting a person from practicing medicine for

money without having first procured a license under the statute. He sued out a writ of habeas corpus. It appeared he made no application to the State Medical Board for permission to register, assuming that he would be denied the right, and on this assumption attacked the constitutionality of the law. The Supreme Court, after pointing out his failure to seek the license, and the probability that he might have obtained it, if he had applied, said:

"On these facts we are of opinion that the plaintiff in error fails to show that the statute inflicts any wrong upon him contrary to the Fourteenth Amendment of the Constitution of the United States. If he has not suffered we are not called upon to speculate upon other cases, or to decide whether the followers of Christian Science * * * might * * * have cause to complain" Collins v. Texas, 223 U. S. 288, 295, 32 Sup. Ct. 286, 288 (56 L. Ed. 439).

So I may say here we are not called upon to decide whether, if Hirsh desired to sell or relet his property, the act would interfere with his doing so. My Associates say that the act deprives Hirsh of his right to a trial by jury, in disregard of the Seventh Amendment to the Constitution. But he did not ask for a jury trial. On the contrary, he moved the court under rule 19, as I have shown, for a judgment without the intervention of a jury. Why should they raise a question not presented by the record in order that they may assail an act of Congress, especially in view of the rule, universally held, that it is the duty of all courts to sustain a statute if it can be done.

"Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without injury. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." Sinking-Fund Cases, 99 U. S. 700, 718 (25 L. Ed. 496) ; Hooper v. California, 155 U. S. 648, 657, 15 Sup. Ct. 207, 39 L. Ed. 297; Presser v. Illinois, 116 U. S. 252, 269, 6 Sup. Ct. 580, 29 L. Ed. 615; Grenada County v. Brogden, 112 U. S. 261, 266, 5 Sup. Ct. 125, 28 L. Ed. 704.

The doctrine of the foregoing cases, which is binding on us, when applied to Hirsh's contentions demonstrates that the latter have no basis in the law. Outside the matter of notice, which I have disposed of, the wrongs of which he complains are imaginary. The questions he raises are purely academic, and not properly before the court for adjudication.

Second. It is urged by Hirsh that the regulation of the use of rental property and of the charges to be made therefor in the District is not within the scope of the police power of Congress, and therefore the act is void. For reasons already given, appellant has no right to raise this question. So far as the act applies to him in the present action it is valid.

Suppose, however, it is open to him to assail the act. Will it stand the test? Congress possesses all the police power within this District that a state Legislature has within its state. Washington Terminal Co. v. District of Columbia, 36 App. D. C. 186, 191; District of Columbia v. Brooke, 214 U. S. 147, 149, 29 Sup. Ct. 560, 53 L. Ed. 941. This is not denied. The police power is a development of the law. It comprehends much more now than it did 60 years ago. Albeit a part

of the common law, it was not known to it under that name. The thirteenth edition of Bouvier's Law Dictionary, published in 1867, did not have it. Chief Justice Marshall seems to be the first to introduce it into the nomenclature of our law when he used it in Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678. Under this power Congress has the right "to enact laws for the promotion of the health, safety, morals and welfare of those subject to its jurisdiction." Chi., B. & Q. R. Co. v. McGuire, 219 U. S. 549, 568, 31 Sup. Ct. 259, 262 (55 L. Ed. 328). "There is," says Mr. Justice Hughes in the same case, "no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." A like doctrine is set forth in Crowley v. Christensen, 137 U. S. 86, 89, 11 Sup. Ct. 13, 34 L. Ed. 620, Jacobson v. Mass., 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765, and Frisbie v. United States, 157 U. S. 160, 165, 15 Sup. Ct. 586, 39 L. Ed. 657.

Congress, however, may not exercise this power except with respect to business or property clothed with a public interest. But who is to decide when property is so clothed? Manifestly this must be done in the first instance by Congress. "The Legislature," said the Supreme Court of the United States in McLean v. Arkansas, 211 U. S. 547, 548, 29 Sup. Ct. 206, 208 (53 L. Ed. 315) "being familiar with local conditions is, primarily, the judge of the necessity of such enactments." In Clark v. Nash, 198 U. S. 361, 369, 25 Sup. Ct. 676, 678, 49 L. Ed. 1085, 4 Ann. Cas. 1171, it was ruled "that what is a public use may frequently and largely depend upon the facts surrounding the subject." After examining many cases, both federal and state, the Supreme Court said:

"They demonstrate that a business, by circumstances and its nature, may rise from private to be of public concern and be subject, in consequence, to governmental regulation." German Alliance Ins. Co. v. Kans., 233 U. S. 389, 411, 34 Sup. Ct. 612, 618 (58 L. Ed. 1011, L. R. A. 1915C, 1189). See, also, Chi., B. & Q. R. Co. v. McGuire, 219 U. S. 549, 569, 31 Sup. Ct. 259, 55 L. Ed. 328; Erie Railroad Co. v. Williams, 233 U. S. 699, 34 Sup. Ct. 761, 58 L. Ed. 1155, 51 L. R. A. (N. S.) 1097.

Congress, in section 122 of the act before us, found that it was—

"made necessary by emergencies growing out of the war with the Imperial German government, resulting in rental conditions in the District of Columbia dangerous to the public health and burdensome to public officers and employés whose duties require them to reside within the District, and other persons whose activities are essential to the maintenance and comfort of such officers and employés, and thereby embarrassing the federal government in the transaction of the public business."

We must assume that this declaration was made in good faith and represents the deliberate judgment of the Congress. The Supreme Court has asserted—

"many times that each act of legislation has the support of the presumption that it is an exercise in the interest of the public." Erie Railroad Co. v. Williams, supra, 233 U. S. 699, 34 Sup. Ct. 761, 58 L. Ed. 1155, 51 L. R. A. (N. S.) 1097.

The determination, therefore, by the Congress, presumably after a careful survey of all the pertinent facts, for we must assume that Congress discharged its full duty (Shreveport v. Cole, 129 U. S. 36, 42, 9 Sup. Ct. 210, 32 L. Ed. 589; Strother v. Lucas, 12 Pet. 410, 9 L. Ed. 1137; Boley v. Griswold, 20 Wall. 486, 488, 22 L. Ed. 375; Butler v. Maples, 9 Wall. 766, 19 L. Ed. 822), that rental property in this District, for the reasons set forth in section 122, was clothed with a public interest when the Ball Act was passed, is entitled to great respect by the courts, and should not be brushed aside, except upon very conclusive proof that it has no basis on which to rest. But we were told at the bar that it had no effect, and should be treated by the court as negligible. Counsel frankly admitted that he did not have any authority for this assertion, and my studies have not revealed any.

In Antoni v. Greenhow, 107 U. S. 769, 775, 2 Sup. Ct. 91, 96 (27 L. Ed. 468), the Supreme Court declared:

"We ought never to overrule the decision of the legislative department of the government, unless a palpable error has been committed"

What, then, is the test by which the court is to ascertain whether this determination by Congress is sound? The Supreme Court furnishes it. In Munn v. Illinois, 94 U. S. 113, 132 (24 L. Ed. 77), it said:

"For our purposes we must assume that, if a state of facts could exist that would justify such legislation, it actually did exist when the statute now under consideration was passed. For us the question is one of power, not of expediency. If no state of circumstances could exist to justify such a statute, then we may declare this one void, because in excess of the legislative power of the State. But if it could, we must presume it did."

Could there be anything plainer or more direct? In oral argument it was urged that this statement was merely obiter. In Antoni v. Greenhow, supra, after the Munn Case had been under the searching scrutiny of the bench and bar for more than six years, the court, citing the Munn Case, said:

"If a state of facts could exist that would justify the change in a remedy which has been made, we must presume it did exist, and that the law was passed on that account."

The Munn decision has been cited numerous times by the Supreme Court as an authority in actions such as the one before us. Ga. Banking Co. v. Smith, 128 U. S. 174, 180, 9 Sup. Ct. 47, 32 L. Ed. 377; Budd v. New York, 143 U. S. 517, 543, 12 Sup. Ct. 468, 36 L. Ed. 247; German Alliance Ins. Co. v. Kansas, supra, 233 U. S. 409, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Brooks Scanlon Co. v. Railroad Commission, 251 U. S. 396, 40 Sup. Ct. 183, 64 L. Ed. ——, decided February 2, this year. In the Kansas Case I find this:

"Munn v. Illinois was approved in many state decisions, but it was brought to the review of this court in Budd v. New York, 143 U. S. 517, and this doc-

trine, after elaborate consideration, reaffirmed, and against the same arguments which are now urged against the Kansas statute."

Thus it is demonstrated that the doctrine of the Munn Case is firmly imbedded in our law.

The majority say with stress that the renting of property in the District is a private business, and because of this not affected with a public interest. The same argument was advanced in the Munn and Budd Cases, supra. In both the owners of the property concerned were private individuals, doing a private business without any privilege or monopoly granted to them by the state; yet it was held, as I have shown, that their property was affected with a public interest. Speaking of the dissenting opinion of Mr. Justice Brewer in the Budd Case, in which he urged the private character of the property there involved, the Supreme Court in the German Alliance Case, supra, said:

"Every consideration was adduced, based on the private character of the business regulated, and, for that reason, its constitutional immunity from regulation, with all the power of argument and illustration of which that great judge was a master. The considerations urged did not prevail. Against them the court opposed the ever existing police power in government and its necessary exercise for the public good, and declared its entire accommodation to the limitations of the Constitution. The court was not deterred by the charge, repeated in the case at bar, that its decision had the sweeping and dangerous comprehension of subjecting to legislative regulation all of the businesses and affairs of life and the prices of all commodities." 233 U. S. 409, 34 Sup. Ct. 618, 58 L. Ed. 1011, L. R. A. 1915C, 1189.

While in a sense contracts between landlords and tenants are private, their effects, under conditions like those enumerated by Congress in the act, go beyond the individuals to the contract, and "when this is so," says the Supreme Court in the German Alliance Case, "there are many examples of regulation."

The Supreme Court has approved a statute prohibiting the sale of intoxicating liquors (Mugler v. Kans., 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205); limiting the hours of employment in mines and smelters (Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780); forbidding the sale of cigarettes without license (Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725); requiring the redemption in cash of store orders issued in payment of wages (Knoxville Iron Co. v. Harbison, 183 U. S. 13, 22 Sup. Ct. 1, 46 L. Ed. 55); prohibiting contracts for options to sell or buy grain (Booch v. Ill., 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623); prescribing the hours of labor for those employed by the state or its municipalities (Atkins v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148); permitting an individual to condemn property for the purpose of obtaining water for his land (Clark v. Nash, 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171); forbidding the employment of women in laundries more than 10 hours a day (Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957); making it unlawful to contract to pay miners employed at quantity rates upon the basis of screened coal, instead of weight of the coal as originally produced in the mine (McLean v. Arkansas, 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315); prohibiting contracts limiting liability for injuries, made in advance of

the injury received (Chicago, etc., R. R. Co. v. McGuire, supra, 549); and regulating the rates to be charged for fire insurance (German Alliance Ins. Co. v. Kansas, supra). In each of these cases the right of private contract was involved, just as much as it is between a landlord and tenant; yet that did not deter the court from holding that the business or property was affected with a public interest and subject to regulation by the Legislature. Courts may take cognizance of whatever is or ought to be generally known within the limits of their jurisdiction. McNichols v. Pease, 207 U. S. 100, 111, 28 Sup. Ct. 58, 52 L. Ed. 121; Underhill v. Hernandez, 168 U. S. 250, 18 Sup. Ct. 83, 42 L. Ed. 456; 15 R. C. L. § 2, p. 1057. I believe the facts found by Congress in section 122 of the act are substantially correct. It would in truth be a bold act to deny their verity. A careful analysis of the facts in the Munn, Budd, McGuire, and German Alliance Insurance Co. Cases, supra, fails to reveal a reason more imperative for a regulatory act than that which existed when the Ball statute was enacted.

There is, then, not only the rule of the Munn Case, namely, that if the facts could exist they must be presumed to exist, but also the knowledge that they did exist, when the act was passed. The burden of establishing that they did not is on the person who attacks the act. Erie Railroad Co. v. Williams, supra. Not a thing has been produced to support this burden. None the less we are asked to find, and the majority have yielded to the request, that there is no truth in the congressional statement. To this I am totally unable to agree.

It seems that if the legislature, in pursuance of the police power, may regulate, as it did in the Munn Case, the charges to be made for grain, it may also regulate, in pursuance of the same power, charges to be made for housing human beings in the District of Columbia.

By the Constitution (article 1, § 8, cl. 17) the District of Columbia is made the seat of the government of the United States, and Congress is given exclusive jurisdiction over it, to the end that the government may not be embarrassed in the exercise of its functions. According to the findings of Congress in the act, a condition exists which is so dangerous to the public health and burdensome to officers and employés of the government as to interfere with them in the discharge of their duties. To say that in those circumstances Congress has not the power to ameliorate the condition is to attribute to our national government a weakness which, if it existed, would be, to say the least, unfortunate.

The decisions cited by the majority on this point either support my position or can be easily differentiated from the case before us; but I can analyze only one (Weems Steamboat Co. v. People's Steamboat Co., 214 U. S. 345, 29 Sup. Ct. 661, 53 L. Ed. 1024, 16 Ann. Cas. 1222), without unreasonably extending this opinion. I take that case because appellant seems to place much reliance upon it. The complainant, a steamboat company, owned wharves on the Rappahannock river. The defendants, a steamboat company and its officers, demanded the right to use the wharves without the consent of the owner upon paying a reasonable compensation. The court held that the complainant was not obliged to yield to the demands of the defendants, and an injunction issued against the latter forbidding them to interfere with complainant in the use of its property. The complainant had not offered its property for rent No statute was involved. It was an attempt by the defend-

ants to compel the complainant to grant them a right in its private property. Nothing of that nature is involved here. Therein lies the distinction between that case and this. Property owners are not obliged to devote their property to rental purposes, but when they do, under the conditions established here, it is subject to the regulatory power of Congress.

"Looking, then, to the common law, from whence came the right which the Constitution protects, we find that when private property is 'affected with a public interest, it ceases to be juris privati only.'" Munn v. Illinois, supra, 94 U. S. 126, 24 L. Ed. 77.

In the light of what has been said, I see no escape from the conclusion that the business of renting property in this District under the conditions mentioned is affected with a public interest.

Third. The fact that Congress has power to regulate does not establish by any means that it may disregard constitutional guaranties and deprive an owner of his property without due process or deny him a reasonable compensation for its use. The power is subject to constitutional limitations. As I have heretofore shown, the act under review does not impinge on any constitutional right which Hirsh is entitled to assert here. If in a proper action by him it should appear that the enforcement of any of the provisions of the act would deprive him of such a right, the courts will be open for his protection. Certain provisions may be void but that would not render the whole act illegal. Section 121 provides:

"If any clause, sentence, paragraph, or part of this title [act] shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operations to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment shall have been rendered."

In a decision of the Supreme Court of the United States rendered March 22, this year, the constitutionality of certain statutes of Oklahoma was considered. The statutes prescribed that a commission should fix maximum rates for services performed by a laundry company. It was provided that disobedience to an order establishing rates would be a contempt of the commission and subject the recalcitrant company to a penalty not exceeding $500 a day. No right of direct appeal to the courts from the action of the commission fixing the rates was permitted, but the company might appeal from a judgment finding it guilty of contempt for disobeying the commission's order. If, however, it failed on the appeal, it might be subjected to the penalty. The Supreme Court held that "a judicial review beset by such deterrents does not satisfy the constitutional requirements," and therefore that the provisions of the acts imposing a penalty pending an appeal were unconstitutional in certain aspects; but that did not, in the judgment of the court, render the other parts of the acts void. It was ruled that—

"If upon final hearing the maximum rates fixed should be found not to be confiscatory, a permanent injunction should nevertheless issue to restrain the enforcement of penalties accrued pendente lite, provided that it also be found that plaintiff had reasonable ground to contest them as being confiscatory." Okla. Operating Co. v. J. E. Love et al., 252 U. S. 331, 40 Sup. Ct. 338, 64 L. Ed. 596.

So here, if any of the provisions of the act before us should be found to be offensive to the Constitution, they may fall without dragging down the remainder of the act.

For the reasons given, I think the judgment of the lower court should be affirmed.