R. A. Moore, Guardian, v. H. J. L. Stark.

No. 5316.   Decided June 12, 1929.

(17 S. W., 2d Series, 1037; 21 S. W., 2d Series, 296.)

*R. L. Batts, Adams & Bruce,* and *H. M. Kinard,* for appellant.

The will is void because violative of the rule against perpetuities. Graham v. Whitredge, 66 L. R. A., p. 413, and authorities cited therein; Andrews v. Lincoln, 56 L. R. A., p. 104; Pultizer v. Livingston, 89 Me., 359, 36 Atl., 635; Gray on Perpetuities, p. 378; Herzog v. Title Guarantee & Trust Co., 67 L. R. A., 149; Quinlan v. Wickman, 17 L. R. A., N. S., 217.

The rule against perpetuities is that no future interest in property shall be created which must not necessarily vest within twenty-one years after a life or lives in being. 30 Cyc. 1467.

Perpetuity is a limitation taking the subject matter of the perpetuity out of commerce for a period of time greater than a life or lives in being and twenty-one years thereafter. If by any possibility a devise violates the rule against perpetuity, it cannot stand. Biglow v. Cady, 171 Ill., 229, 63 A. L. R., 230, quoted in Anderson v. Menefee, 174 S. W., 907.

If there is a possibility that a violation of this rule can happen, then the devise must be held void. Waldo v. Cummings, 45 Ill., 421; Post v. Rohrback, 142 Ill., 600; Deford v. Deford, 36 Md., 176; Sears v. Putnam, 102 Mass., 6; Gray, Perps., Secs. 204, 369, 374, quoted in Anderson v. Menefee, 174 S. W., 908; Gray's Rule Against Perpetuities, 2nd ed., Sec. 201, p. 166; 30 Cyc., 1485. The rule deals with the vesting of the title. Anderson v. Menefee, 174 S. W., 908.

The will definitely violates the law against perpetuities. The specific bequests to Babette Moore, great-granddaughter, are, one of them, dependent upon her reaching the age of sixteen, another upon her reaching the age of seventeen, and another upon her reaching the age of eighteen. "In the event," says the will, "Babatte should die before coming into possession of any of the things given her by this will * * * the remaining things herein willed Babette shall

be given by my executor to my oldest living great-granddaughter, if I should then have one, but if I should at that time not have a living great-granddaughter, then all of my said things * * * shall become a part of my general property and pass under the other provisions of the will."

In the instant case, the will provides for payment of each bequest after the next preceding bequest. Manifestly the payments for a number of named lives must be made before other bequests can vest. But these named lives are not, under the will, indicated as parts of the period within which vestiture must take place, and therefore the limit of time within which the property may be kept out of commerce is not a life or lives in being and twenty-one years, but twenty-one years only. Johnson v. Preston, 226 Ill., 447, 10 L. R. A. (N. S.) 564.

Title to the valuable properties named in this paragraph of the will is in abeyance until Babette reaches the age of seventeen as to some of the property and eighteen as to some; title then is dependent upon the existence at that time of a person or class of persons in one of whom title may vest. If title does not then vest in such person, it goes back into the estate and is subject to all the other contingencies which will hereafter be discussed. In any event the vestiture is made dependent upon two conditions, impossible now of determination, upon two future contingencies either or both of which may or may not be. It will be noted that the great-granddaughter in whom the property might in the future vest was not someone in being (or not necessarily same one in being) at the time of the testatrix's death, but someone who might be in being at the time of the death of Babette Moore before reaching the age of seventeen and eighteen. There is no dissent among the authorities as to the invalidity of this provision of the will. Anderson v. Menefee, 174 S. W., 905.

In Neely v. Brogdon, 214 S. W., 614, it is declared that a void will is no will. In the Constitution it is declared that "perpetuities * * * shall not be allowed." A will creating a perpetuity is no will. A court may probate wills only—not illegal void instruments not wills. A court cannot "allow" a perpetuity. However irregularly the question may come before it, a court cannot render a judgment that would have this forbidden effect. No rule of procedure could be adopted by the Legislature that would compel a court to allow a perpetuity. Texas & Pacific Coal Co. v. Lawson, 34 S. W., 720; Purdue v. Purdue, 208 S. W., 355; Brauer v. Brauer, L. R. A., 1918A, 445.

The legal right of appellant, to contest and oppose the probate of the instrument offered, as a will, is shown by her pleadings filed for that purpose. City of Dallas v. Shows, 212 S. W., 633.

Under her pleadings, which are taken as true on general demurrer, the contestant, while receiving a gift under the purported instrument offered for probate, was to receive under a former instrument, which was attempted to be revoked by the present instrument, a legacy in value in excess of that given to her in the present instrument.

It is well to note, however, that an interested party, as defined by the courts of 'Texas, includes all persons named in the instrument as legatees and devisees, regardless of whether they be otherwise interested in the estate of the testator or not. Franks v. Chapman, 61 Texas, 582; Peana Y. Vidaurri's Estate v. Bruni, 156 S. W., 316; State National Bank v. Trevino, 215 S. W., 990; Daniels v. Jones, 224 S. W., 477.

*Kennerly, Williams, Lee, Hill & Sears, Fred L. Williams,* and *Geo. A. Hill, Jr.,* attorneys for appellee.

The appellant, although claiming to be interested in the estate of Mrs Frances A. Lutcher, deceased, failed and refused to support by any evidence whatsoever the existence of such an interest as would be affected by the probate of the will offered for probate, after the proponent thereof had duly excepted to the appellant's right to contest such will because of the lack of such interest, and had made timely demand for proof of such interest, and the District Court correctly held that under the undisputed evidence offered by the proponent of the will, the appellant was shown to be a person having no interest in the estate of the decedent that would be affected. Article 932, Revised Civil Statute, revision of 1925; Abrams v. Ross' Estate, 250 S. W., 1019; Newton v. Newton, 61 Texas, 511–514; Haines v. Little, 242 S. W., 266; Ross' Estate v. Abrams, 239 S. W., 705; Ruling Case Law, Vol. 28, title Wills, Secs. 389, 390.

The pleadings of the appellant in the District Court affirmatively disclosed the lack of any interest in the estate of the decedent that would be affected by the probate of the will. Same authorities.

The will of Mrs. Frances A. Lutcher, deceased, does not violate the rule against perpetuities, and is not void. Article 1, Sec. 26 of the Constitution of the State of Texas; Neely v. Brogden, 239 S. W., 192; Anderson v. Menefee, 174 S. W. 904; Thornton v. Zea, 55 S. W., 798; Stewart v. Harriman, 22 Am. Rep., 408; Volume 2, Underhill on Law of Wills, Sec. 861; Cyc., Volume 30, p. 1493; Rev. Stats. 1925, Arts. 3314, 3436, 3448 and 3450; Gates v. Siebert,

57 S. W., 1065; Deacon v. St. Louis Union Trust Co., 197 S. W., 261; Cyc., Vol. 40, pp. 1648, 1649, 1650, 1657.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the Ninth District certifies the following questions:

"This appeal involves the contest of a will, on several grounds, and as to one of the grounds, this court is divided as to the disposition that should be made of it. And because of the importance of the question and the large value of the estate to which the will relates, we deem it advisable to certify to Your Honors, in advance of disposition by us, the following statement and questions.

"On October 31, 1924, H. J. L. Stark filed an application in the County Court of Orange County for the probate of the last will and testament of Mrs. Frances A. Lutcher, and filed in said court the will, hereinafter fully set forth.

"On November 3, 1924, the appellant, R. A. Moore, as guardian of Brownie Babette Moore, a minor, filed in the County Court a contest to the probate of the will, on the ground that the same was not offered as required by law and was an altered instrument; and that the testatrix did not have sufficient mental capacity to make a will, etc.

"The proponent of the will excepted *in limine* to the right of such contestant to contest the probate of said will, without first making proof that the contestant was interested in the estate of decedent, and in the subject matter of the will contest; and said application for the probate of the will coming on to be heard on the 12th day of January, 1925, the County Court sustained the exception of the proponent of the will, and the contestant having failed to submit any proof of such interest, in compliance with the demand of the proponent of the will, the court proceeded to hear the evidence submitted, and the following instrument was probated as the last will and testament of Mrs. Frances A. Lutcher, deceased:

" 'THE STATE OF TEXAS, COUNTY OF ORANGE.

" 'IN THE NAME OF GOD, AMEN:

" 'I, Frances A. Lutcher, of Orange County, Texas, being in good health and of sound and disposing mind and memory, but calling to mind the frailty and uncertainty of human life and being desirous of settling my worldly affairs and directing how the estate with which it has pleased God to bless me shall be disposed of after my decease while I have strength and capacity to do so, do hereby make

and publish this my last will and testament hereby expressly and in all things revoking all other wills heretofore made by me.

## FIRST.

" 'I direct that my just debts and funeral expenses shall by my executor hereinafter named be paid out of my estate as soon after my death as to him shall be found convenient.

## SECOND.

" 'I direct that as soon after my death as possible my executor shall take possession of my entire properties left by me at the time of my death and shall dispose of such as he may see proper at such times as he may see proper and for such price and upon such terms as he may see proper and shall pay to the parties entitled thereto in the order named the special bequests hereinafter made to them.

## THIRD.

" 'As soon after my death as is convenient I direct that my executor shall deliver to the persons to whom the same are hereinafter given all properties mentioned and bequeathed, delivering same in person to the persons entitled thereto hereunder.

## FOURTH.

" 'I hereby give and bequeath to my beloved daughter Miriam Stark, wife of W. H. Stark, of Orange County, Texas, my corsage bow set with diamonds; my purple saphire set with diamonds; my cameo set; one Twentieth Century diamond ring; one amethist and diamond LaValliere; one chain with nine diamonds; one diamond ring with two diamonds; being the one I bought from Julia Moss; one black watch with diamonds, and diamond black chain; one cameo pin; one blue Japanese coat; one gold and silver vase, with jewels; my old diamond ear rings, and one string of amethist; the portraits of my father and mother now in my residence at Orange; one string of amethist beads; one opal pin and string of opal beads; one gold band bracelet; one black purse set with pearls; one muff and one stole of chinchilla; one platinum diamond bracelet; one large cameo pin; "Aurora Borealis"; one small opal ring; one single pearl ring; all presents of every kind of personal or household character heretofore given to me by my said daughter, Miriam Stark.

## FIFTH.

" 'I give and bequeath to my beloved daughter, Carrie Brown, widow of E. W. Brown, of Orange County, Texas, one Twentieth

Century diamond ring; one diamond crescent containing father's diamond stud; one gold bracelet with three diamonds; one mourning bracelet; one black locket with pearls and chain; one bar pin of pearls and diamonds; onyx locket with Grandpa's picture; my black opal pin; my three mourning pins; all pictures of myself and Babette together except picture in the parlor; ring and pin containing three stones given me by Mr. Lutcher except the two end stones which were in earrings and go to Miriam M. Stark; and all oil paintings painted by her, the said Carrie Brown, and given by her to me; and all presents of every kind of a personal or household character at any time heretofore given by my said daughter, Carrie Brown, to me.

### SIXTH.

" 'I give and bequeath to my grandson, H. J. Lutcher Stark, one black diamond, one ruby, being the one now in a ring with two pear-shaped diamonds; the big prayer rug; his grandfather's portrait; one Satsuma vase; with monkey; one piece of ivory called "Japanese Girl"; my gold locket set with single diamond; my original watch.

### SEVENTH.

" 'I give and bequeath to my granddaughter, Nita Stark, wife of Lutcher Stark, of Orange, Texas, my diamond necklace; one wreath of Diamonds; one Jade LaValliere; one jade bracelet; one jade ring; one gold bracelet with pictures; one LaValliere with pear-shaped diamond and pin; one amethist bracelet; one amethist pin; one little finger ring containing one dark pearl and two pearls set with diamonds; one bracelet set with garnets; very old; my suit trimmed with chinchilla; one diamond LaValliere with three discs; one black diamond brooch; filigree work with diamonds; my set of ermine furs; one long watch chain with ten diamonds; my string of pearls and my gold watch set with diamonds; and enamelled green.

### EIGHTH.

" 'I give and bequeath to my grandson, Lutcher Brown, of Orange, Texas, one pear-shaped diamond being one now set in a ring with one ruby and two pear shaped diamonds.

### NINTH.

" 'I give and bequeath to my grandson, Edgar W. Brown, Jr., of Orange, Texas, one pear-shaped diamond being one now set in a ring with one ruby and two pear shaped diamonds.

### TENTH.

" 'I give and bequeath to my great-granddaughter, Brownie Babette Moore, daughter of Fannie Moore and R. A. Moore, of Orange, Texas, to be delivered by my executor to her on her sixteenth birthday, should she then be living, one ring with three pink pearls with diamonds; and on her seventeenth birthday, if she is then living, one ring with two diamonds, one yellow and one white; and on her eighteenth birthday, if she is then living, my gold bracelet set with emerald and diamonds; one diamond ring with three diamonds; her miniature set with pearls; the portrait of myself and Babette; my rose point dress; and point lace fan; one chatalaine, and one box of trinkets.

" 'In the event my said great-granddaughter, Brownie Babette, should die before coming into possession of any of the things given to her by this will and hereinbefore enumerated, then upon her death the miniature of Babette set with pearls and the portrait of myself and Babette mentioned above shall be immediately given by my executor to her grandmother, Carrie L. Brown, who shall thereafter own same; and the remaining things herein willed Babette shall be given by my executor to my oldest living great-granddaughter, if I should then have one, to be her inheritance from me; but if I should at that time not have a living great-granddaughter, then all of said things shall cease to be a special bequest and shall become a part of my general property and pass under the other provisions of this will.

### ELEVENTH.

" 'I give and bequeath to Mrs. Helen Fowler, formerly Helen Achenbach, one ring with three topaz and one bracelet with three diamonds.

### TWELFTH.

" 'I give and bequeath to my friend, Mrs. Ida Achenbach, of Orange, Texas, my set of garnets and the sum of One Hundred ($100.00) Dollars per month so long as she lives and remains unmarried, which said sum of money shall be paid to her regularly each month by my executor.

### THIRTEENTH.

" 'I give and bequeath to Mrs. Weichoff of Williamsport, Pennsylvania, One Hundred ($100.00) Dollars per month so long as she may live and direct that my executor pay this sum of money to her regularly each month during her lifetime.

### FOURTEENTH.

" 'I direct that my executor pay regularly each month out of my estate to Lillie Eslinger, daughter of Mary Eslinger, of Williamsport, Pennsylvania, the sum of One Hundred ($100.00) Dollars per month as long as she remains single.

### FIFTEENTH.

" 'I give and bequeath to Mrs. Louisa Wilber, of Williamsport, Pennsylvania, One Hundred ($100.00) Dollars per month until her death and direct that my executor pay said sum to her regularly each month so long as she may live.

### SIXTEENTH.

" 'I give and bequeath to Mrs. Albert Lutcher, of Williamsport, Pennsylvania, the wife of my deceased husband's brother, the sum of One Hundred ($100.00) Dollars per month so long as she may live, and direct that my executor pay said sum to her regularly each month during her life time.

### SEVENTEENTH.

" 'I give and bequeath to my beloved cousin, Mrs. Charlotte Hansbery of Philadelphia, Pennsylvania, the sum of One Hundred ($100.00) Dollars per month until her death and direct that my executor pay said sum of money to her regularly each month during her life time.

### EIGHTEENTH.

" 'I give and bequeath to my grandson, Edgar W. Brown, Jr., the sum of Five Thousand ($5,000.00) Dollars, to be paid to him as soon after my death by my executor as he can find convenient.

### NINETEENTH.

" 'I give and bequeath to my grandson, Lutcher Brown, the sum of Five Thousand ($5,000.00) Dollars to be paid to him as soon after my death as convenient by my executor.

### TWENTIETH.

" 'I give and bequeath to my servant, Rosa Hamilton, if she is in my service at the time of decease, the sum of One Thousand ($1,000.00) Dollars, to be paid to her by my executor; but if the said Rosa Hamilton is not living at said time or is not at the time of my death in my employ then this bequest shall be null and void.

### Twenty-first.

" 'I give and bequeath to my servant, Fannie Williams, if she is in my service at the time of my decease, the sum of Five Hundred ($500.00) Dollars to be paid to her by my executor; but if the said Fannie Williams should not then be living or should not be in my employ at the time of my death then this bequest shall be null and void.

### Twenty-second.

" 'I give and bequeath to Mr. Clough, my watchman, if he is still in my service at the time of my death, the sum of Five Hundred ($500.00) Dollars, to be paid to him by my executor; but in the event he is not then living, or is not in my employ at the time of my death, then this bequest shall be null and void.

### Twenty-third.

" 'I give and bequeath to my florist, Joseph Kastizenski, if he should be in my employ at the time of my death, the sum of One Thousand ($1,000.00) Dollars to be paid to him by my executor; but in the event he is not then living or is not in my employ at the time of my death, then this bequest shall be null and void.

### Twenty-fourth.

" 'I give and bequeath to my Chauffeur, Herbert Fielder, if he is in my employ at the time of my death, the sum of One Thousand ($1,000.00) Dollars to paid to him by my executor; but if he is not then living or if he should not be in my employ at the time of my death, then this bequest shall be null and void.

### Twenty-fifth.

" 'I give and bequeath to my beloved daughter, Miriam Stark, wife of W. H. Stark, of Orange, Texas, the sum of One Million ($1,000,000.00) Dollars, to be paid to her by my executor as soon after my death as can be conveniently done.

### Twenty-sixth.

" 'I give and bequeath to my beloved daughter, Carrie Brown, the sum of One Million ($1,000,000.00) Dollars, to be paid to her by my executor as soon after my death as can be conveniently done.

### Twenty-seventh.

" 'I give and bequeath to my grandson, H. J. Lutcher Stark, all of the residue and remaining portion of my estate after the payment of the bequests and delivery of the gifts mentioned and enu-

.merated herein, wherever the same may be situated, whatever the character thereof may be, real, personal, or mixed, including stocks, notes, bonds, houses, personal property of all kinds, including my ranch and everything connected therewith in Colorado; my home in Orange, Texas, and everything therein and appurtenant thereto, of every character and to include everything of every character of which I may die possessed, whether the same be real, personal, or mixed, or wherever the same may be situated, or whatever its value or nature may be, not intending to exclude anything of any character by reason of anything said herein but intending to pass to him the entire residue of my estate after the payment of the special bequests hereinbefore mentioned and made; the same to be his after the payment of said special bequests full, finally and in fee simple.

### Twenty-eighth.

" 'I hereby nominate and appoint my grandson, H. J. Lutcher Stark, of Orange, Texas, to be the sole executor of this my last will and testament and I direct that he serve as such without pay and that no bond or security of any character be required of him as such executor and I specially authorize my said executor to sell and dispose of any portion of my estate or all of same as he may see proper at public or private sale and in the manner, for the price, and upon the terms, that to him may seem best and proper, for the purpose of carrying out the provisions and all of the provisions of this will.

### Twenty-ninth.

" 'All bequests made by me in this will are expressly made upon the following provisions, to-wit: That should any person to whom a bequest is made herein contest this will or engage in any character of contest or attack thereon, or institute any litigation over my estate in contradiction of the terms of this will, such bequests to such person or persons shall immediately become null and void and the property or properties bequeathed to them shall become a part of the corpus of my estate as though no such bequest had ever been made.

### Thirtieth.

" 'It is my direction that no other action be had in the courts in the administration of my estate other than the probate of this will and the return of an inventory, appraisement and list of claims.

" 'In witness whereof I hereunto set my hand this 17th day of February, A. D. 1919, in the presence of Joe Lucas and A. G.

Pearce, lawful witnesses, who attest the same as witnesses at my request and in my presence and in the presence of each other.

"'F. A. LUTCHER.

"'The above instrument is now here subscribed by Mrs. Frances A. Lutcher, the testator, in our presence as witnesses and we as witnesses thereto in her presence and at her request and in the presence of each other subscribe our names hereto as attesting witnesses to such instrument.

"'JOE LUCAS
"'A. G. PEARCE.'"

"Said will was duly established by the testimony of the two subscribing witnesses thereto.

"R. A. Moore, Guardian of Brownie Babette Moore, a minor, gave notice of appeal to the District Court of Orange County, Texas, but did not perfect his appeal.

"Subsequently, on the 9th day of February, 1925, R. A. Moore, Guardian, filed his petition for certiorari in the District Court of Orange County, to review the judgment entered by the County Court, for the particular errors complained of in the said petition for certiorari, which were claimed to be:

"(1) That the said R. A. Moore, Guardian, was denied the right to offer evidence, or examine or cross-examine witnesses.

"(2) That the Probate Court was without jurisdiction, because the application for probate did not allege that the testatrix was over twenty-one years old, and did not allege that she was of sound mind and disposing memory, and did not allege that the will was made under circumstances required by law; and

"(3) That proper notice of time and place of probating the will was not given according to law; and

"(4) That the proceedings were void and irregular and in violation of the laws of Texas and the Constitution of the United States; and

"(5) The application for probate was fatally defective and did not state a cause of action; and

"(6) That the court erred in sustaining the exceptions of the proponent of the will.

"The petition for certiorari alleged that H. J. L. Stark, independent executor, was the only person adversely interested, and he was duly cited to appear and answer the proceedings in certiorari in the District Court of Orange County, Texas.

"H. J. L. Stark, independent executor, filed in the District Court of Orange County, Texas, his answer to the petition for certiorari,

excepting a limine to the further prosecution of the proceedings in certiorari, unless and until the said R. A. Moore, Guardian of Brownie Babette Moore, a minor, should first show an interest in the estate of the decedent, demand for proof of which was specially made, and otherwise made due answer to the petition for certiorari.

"The certiorari proceedings were heard on November 22, 1925, and the District Court sustained the exception of the Independent Executor to the petition for certiorari of R. A. Moore, Guardian, upon his failure to establish by proof, or submit any proof of an interest of the contestant in the estate of the decedent, and in connection with said exception the Independent Executor submitted evidence establishing a lack of interest on the part of the contestant in the estate of the decedent.

"The District Court then proceeded, upon the evidence submitted in said court, to approve and confirm the judgment entered in the County Court of Orange County on January 12, 1925, and certified its said judgment to the County Court of Orange County, Texas, for observance.

"In compliance with the demand of the contestant, the District Court filed its findings of fact and conclusions of law, which said findings of fact are not attacked or sought to be reviewed in this court.

"R. A. Moore, Guardian, excepted to the judgment entered by the District Court of Orange County, Texas, and gave notice of appeal, and thereafter duly perfected his appeal to this court.

"On the day that this cause was set for submission and oral argument in this court, the appellant filed in this court a written suggestion urging that this court declare and hold that the will admitted to probate be declared void because it was and is in violation of the rule against perpetuities, and requested leave of this court to file a supplemental brief in support of this contention. This attack on the will was suggested and made for the first time by appellant when the case was called for submission, and is here presented by appellant as fundamental error.

"1.   Does the will of Mrs. Frances A. Lutcher, admitted to probate by the County Court of Orange County, violate the rule against perpetuities?

."2.   If the will does violate the rule against perpetuities, is appellant entitled to contest the probate of the will, as attempted by him, without a showing of an interest in himself or his ward in the estate of the testatrix, Mrs. Frances A. Lutcher?

"3. If the will is not void because violative of the rule against perpetuities, was appellant entitled to contest the probate of the will in this proceeding, as he attempted to do, in the absence of proof of an interest in himself or his ward in the estate of the testatrix, Mrs. Frances A. Lutcher?"

We will not consider the questions in the order in which they were presented, for our views upon one question make it unnecessary to decide the others.

Article 3315 of our Statute concerning Estates of Decedents provides:

"Any person interested in an estate may, at any time before any character of proceeding is decided upon by the court, file opposition thereto in writing, and shall be entitled to process for witnesses and evidence, and to be heard upon such opposition as in other suits." This is but a concrete statement of the universal rule of parties that no person will be permitted to maintain a proceeding without showing an interest in the subject-matter thereof. It is contrary to the policy of the State to permit the machinery of its courts to be set in motion at the instance of one who can in no event be profited thereby. Courts do not sit to decide mere abstract questions of law but to redress grievances and prevent wrongs. Whatever the jurisdiction of a court, that court has no power to exercise such jurisdiction until its power is invoked by one having an interest in the subject matter. But we need not deal in generalities for the precise question has been decided in this State.

In Abrams, et al. v. Ross' Estate, et al., 250 S. W., 1019, the Commission of Appeals, through Presiding Judge Gallagher, said: "Obviously the burden is upon every person appearing to oppose the probate of a will to allege, and, if required, to prove, that he has some interest in the estate of the testator which will be affected by such will if admitted to probate. In the absence of such interest a contestant is a mere meddlesome intruder." The Supreme Court, upon the recommendation of the Commission of Appeals, ordered that the District Court, upon another trial would be governed by the opinion of the Commission of Appeals.

In Dickson v. Dickson, 5 S. W. (2d) 744, Presiding Judge Short, for the Commission of Appeals, cited, with approval, the Abrams v. Ross case and other cases holding that such interest entitling one to contest the probate of a will means that such person would but for the will have an interest in the estate. This evidently is the common sense meaning of this statute. The interest to be protected is the right that would otherwise be jeopardized. One who confessedly

would receive no benefit from the court's decision can not invoke its judgment.

Here the certificate shows that appellant's wards have no interest in the estate of Mrs. Frances A. Lutcher. They would not take in any manner any part of the estate if the will should be denied probate. To insist upon a hearing, under such circumstances, is to trifle with the courts. Upon such a contest the court could redress no injury, nor could it protect any right.

If the appellant, for want of an interest in the estate, cannot contest the probate of the will it, of course, can make no difference what the ground of such contest may be. Conceding that the will was, in truth, void as creating a perpetuity, its invalidity would be no greater than if it were a forgery, obtained by fraud or duress, or executed by one lacking in testamentary capacity. Under any of these circumstances the will would be subject to contest by any interested person, but in none of them could a stranger invoke the powers of the court upon a contest.

So that, we answer questions 2 and 3 that whatever the invalidity of the will may be, the appellant is not entitled to contest its probate because his wards are shown to have no interest in the estate.

This renders it entirely unnecessary, if not improper, to answer the first question propounded as to whether the will involved violates the rule against perpetuities.

Opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

C. M. Cureton, Chief Justice.

ON APPELLANT'S MOTION FOR REHEARING.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals.

Appellant complains that we should have answered the question involving the validity of the will without any determination of the one involving the capacity of the appellant, or at least that "the right or failure of the right of the appellant to contest cannot be an issue until the central question is determined." Throughout the able argument filed in support of the motion the point is stressed that since the Constitution forbids the creation of a perpetuity, the matter is of such a nature that it should be determined as going to the very right of the trial court, or any court as to that, to order the will to be probated. Counsel argues that the Constitution being thus emphatic, and the vice, if any appearing upon the very face of the will

tendered for probate, the primary consideration for the court is the validity of the instrument. But this reasoning is specious. It is true the Constitution does prohibit the creation of a perpetuity. It is likewise true if the will in controversy is subject to that criticism the vice appears upon the face of the instrument offered for probate. It is also true that if the instrument is void as being in contravention of the Constitution, it should not have been probated by the trial court. For it was, as argued by counsel for the motion, the duty of that court to probate only a valid will; but all these considerations are beside the one controlling question which we decided on the original hearing. They may all be, as they should be, conceded. But where, as here, an instrument has been probated as a last will and one seeks to reverse that judgment upon appeal from a contest, the burden is upon him primarily to show that he is an interested party; in other words, that he is aggrieved or his legal rights have, in some way, been affected adversely by the decision. This is the doorway to any consideration of the merits. It is not enough that he shows an error has been committed but he must further show that it was of such a nature as was calculated to injure him. And this rule applies equally to those cases, such as this, where the supposed error consists of a violation of a constitutional provision. It is not a question of the enormity of the error but of the right of the complainant to attack it. It is akin to, if not identical with, the well-established rule that one who assails a law as unconstitutional must come showing that the feature of the act complained of operates to deprive him of some constitutional right. Aikins v. Kingsbury, 247 U. S., 484, 62 L. Ed., 1226, and cases cited.

The argument is further made that if the will is void because of the perpetuity alleged, its attempted probate imparts no validity thereto and it is of no force whatever and may be attacked directly or collaterally by anyone at any time in any tribunal. All this is abstractly true but it is equally true that such one must, in order to sustain the attack, be interested in the matter to be determined. This means more than a mere popular interest. It means a legal interest in the subject-matter,—one cognizable by the courts. It is sufficient for the ends of justice,—and that is the purpose of law,— that anyone interested may raise the question of the validity of the will if he timely objects. If, as contended, the will creates a perpetuity and the attempted probate thereof is void, then anyone interested in the matter could assail the instrument whenever and wherever adverse rights were attempted to be asserted under it.

But this in nowise argues against what we have held, that the appellant cannot, at any time or anywhere, attack the probate of the will in the absence of a showing of interest in the estate.

We therefore recommend that the motion for rehearing be overruled.