**TWING et al. v. RHODES et al. (No. 1729.)**

Court of Civil Appeals of Texas. Beaumont. Jan. 23, 1930.

Rehearing Denied Feb. 12, 1930.

Lightfoot, Robertson & Scurlock, of Fort Worth, and W. M. Harris, of Dallas, for appellants.

Oliver J. Todd, of Beaumont, and J. M. Sanders, of Center, for appellees.

HIGHTOWER, C. J. We take the following statement of the nature of this suit from the opinion of the Commission of Appeals answering our certified questions (Twing v. Rhodes, 16 S.W.(2d) 258):

"The appellees, as residents and taxpayers in what is known as road district No. 4 of Shelby county, sue various holders of bonds purporting to have been issued by said road district in the year 1919, in pursuance of the provisions of article 627 and succeeding articles of the Revised Civil Statutes of 1911. The members of the commissioners' court of said county and the tax collector and tax assessor of the county are also made parties defendant. The plaintiffs seek to have all said bonds cancelled and declared void, and to enjoin the levy, assessment, and collection of taxes for the payment of said bonds. It is claimed that all the bonds are void for lack of power in the district to issue them, in that said district had no such legal existence, at the time the bonds were issued, as to give it legal authority to issue the bonds and levy taxes to pay same.

"The district was formed in the year 1919 in pursuance of the provisions of the statutes above mentioned; and an election was held to determine whether or not said bonds should be issued and sufficient taxes levied to pay same. At the election, more than two-thirds of the voters therein voted in favor of the issuance of the bonds and the levy of the tax. All the proceedings relating to the establishment of the district, the election, the issuance of the bonds, and the tax levy, conformed to the statutes mentioned above. The road district was composed of a portion of said county, and had not been created or defined by the Legislature for any purpose. None of the plaintiffs signed the petition for the election, and none was given an opportunity to be heard respecting the inclusion of his lands within the boundaries of the district.

"In the same year, after the commissioners' court had passed an order directing the issuance of the bonds, the bonds were duly prepared and signed; and, under order of said court, were delivered to one E. L. Twing, who paid nothing for them. They were subsequently sold by Twing to the various holders who are parties defendant herein. No part of the proceeds of the sales has ever been received by the county treasurer for the credit of the road district. All such proceeds were appropriated by Twing to his own use. The various bondholders who are parties defendant herein claim to be holders in due course."

Upon the facts and issues thus stated the trial court annulled and declared void all bonds involved in this litigation, and further concluded that appellants were not holders in due course. These bonds, as well as all similar bonds issued by road districts, were made void by the decree of the Supreme Court of the United States in Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330. To adjust the financial and moral issues raised by this case the Governor of Texas called into special session the Thirty-Ninth Legislature, which passed a general act (Chapter 17 of the Acts of the First Called Session) with the declared purpose of validating the road districts, fixing their boundaries, and of validat-

ing the bonds issued by them. As construed by the Supreme Court in Anderson County Road District v. Pollard, 116 Tex. 547, 296 S. W. 1062, where the first three sections of the act are set out, sections 1 and 2 validated the road districts and fixed their boundaries, and, where the bonds had not been sold, validated the bonds. Section 3 prescribed the necessary conditions to make valid bonds that had been issued and sold. These conditions were that the bonds must have been issued in strict accordance with the pre-existing laws and their proceeds "received by the county treasurer of said county for the credit of" the district issuing them. The Fortieth Legislature, at its regular session (chapter 121 of its proceedings), "created and established" road district No. 4 with the same boundaries as the old district, and all proceedings had under the old law in creating the old district were validated, and certain bonds issued by the old district were validated by direct reference to their numbers. As to the remaining bonds of the same series, describing them by numbers, the proceeds of which were not paid to the county treasurer, this act, and especially section 6 thereof, provided: "It is also provided that with the exception of the above described bonds no other bonds of said District No. 4 are recognized as binding legal or moral obligations against said district, and nothing herein shall be effective to validate or ratify any other bonds than those specifically mentioned herein."

By their original brief filed in this court appellants advanced the following propositions construing the general act passed at the called session of the Thirty-Ninth Legislature and this special act passed at the regular session of the Fortieth Legislature: (a) The Legislature had the power to validate these bonds even if they were void, and did validate them by the general act above referred to. (b) The provisions of the special act by which these bonds were not validated, but expressly declared invalid, were void. (c) By creating a new road district No. 4, if the special act had that affect, the Legislature necessarily imposed upon it the burdens of the old invalid district, thereby validating these bonds. Because of the distinction between the facts of this case and the facts of Anderson County Road District v. Pollard, supra, and Tom Green County v. Moody, 116 Tex. 299, 289 S. W. 381, and Louisiana Railway & Navigation District v. State (Tex. Civ. App.) 298 S. W. 462, in that the proceeds of these bonds were not paid to the county treasurer, we thought the cases cited did not control appellant's propositions and sent these propositions to the Supreme Court by our question No. 8:

"(a) What was the legal effect, as to the validation of the Road District and of these bonds, of Chapter 17 of the General Laws of the first called session of the Thirty-ninth Legislature of Texas, approved October 18, 1926, and of Chapter 121 of the General and Special Laws of the regular session of the Fortieth Legislature of Texas, approved March 8, 1927?

"(b) Did the Legislature of Texas have the power and discretion to validate other bonds of the same series of bonds of Road District No. 4 and refuse to validate those involved in this suit as it did?"

In answering our certificate the Commission of Appeals eliminated all of section (b) and the last part of section (a), certifying the special act, and restated the question as follows: "One of the questions certified reads as follows: 'What was the legal effect, as to the validation of this road district and of these bonds, of Chapter 17 of the General Laws of the First Called Session of the Thirty-ninth Legislature of Texas, approved October 18, 1926?'"

The Commission of Appeals answered the question by construing only sections 1 and 2 of the general act. Upon this construction the Supreme Court has certified to us the conclusion of the Commission of Appeals that "all the bonds involved in this suit were validated by the act in question." Being in doubt as to the effect of this answer in disposing of appellant's three propositions, supra, which involved all the provisions of both acts, we resubmitted the case for argument upon this point. Appellees now insist that this answer is of no legal effect and is not binding upon us, because they say the Commission of Appeals did not answer the question certified, but submitted and answered its own question presenting entirely different legal propositions from those presented by our question. Their proposition is that the Commission of Appeals was without jurisdiction to restate our question, but, having done so, its answer is void. Yet, if it be conceded that the answer is binding upon us, they say it can relate only to sections 1 and 2 of the general act, and, the answer not construing section 3 nor the special act, the Commission of Appeals manifested an intention to leave these acts to be construed by us. We cannot agree to this construction of the mandate of the Supreme Court. Question No. 8, with all the facts necessary for its decision and all the law necessary for its construction, was before the Commission of Appeals. We cannot question the jurisdiction of the Supreme Court to restate our question and answer the question as restated. The answer certified is the law of this case. Nor can we agree with appellees that section 3 of the general act and the special act are before us for construction on the issue of *validation.* It was the intent of our question, as we construed it, to certify section 3 and the special act on that issue. But, by taking them out of our question, the Commission of Appeals held they had no relation to the issue certified. In answering the question it was clearly the in-

tent of the Commission of Appeals to validate these bonds as against the judgment of the trial court declaring them invalid. However, this construction does not make null and void the special act and section 3 of the general act. The duty rests upon us to determine their validity in relation to the other issues before us.

■ This brings us to the conclusions of the trial court, to the effect that appellants were not holders in due course. These conclusions rest upon three grounds. First: That appellants were not holders in due course, because the bonds were invalid when purchased. The opinion of the Commission of Appeals denies this ground. It was there said that the holders who acquired their bonds before the passage of the general act "can no longer be deprived of the character of holders in due course by the mere fact that the bonds, because of lack of power in the district to issue them, were invalid when acquired." Second: By extraneous evidence, independent of and having no relation to these validating acts, the trial court held, as a fact issue, that appellants were not good faith purchasers. This evidence was merely to the effect that Twing, who secured possession of the bonds from Shelby county and sold them upon the bond market in Chicago, where appellants bought them as subsequent holders, was notoriously insolvent, of a bad moral reputation, etc.; that the holders bought the bonds at a discount, in some instances amounting to 25 per cent.; that the orders of the commissioners' court of Shelby county surrendering the possession of the bonds to Twing were illegal; that the holders required no legal opinion as to the validity of the bonds when they bought them, etc. It is our conclusion that all such evidence was inadmissible, but, having been received, was without any probative force; because it was shown that the present holders never heard of Twing, but bought the bonds in good faith upon the open bond market of the city of Chicago, paying value therefor, and paying the reasonable market value for the bonds at the time purchased. Road District No. 4 v. Home Bank & Trust Co. (C. C. A.) 5 F.(2d) 625; Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880; American Surety Co. of New York v. Hill County (Tex. Com. App.) 267 S. W. 265. Third: The third ground relates to this validating legislation. If section 3 of the general act does not relate to the issue of validation, though it uses appropriate words for that purpose, (and that is the holding of the Commission of Appeals), then we have concluded that it relates to the issue of holders in due course. Evidently the Legislature intended some purpose by its enactment. It was legislation for the benefit of the holders of void bonds. The Legislature not only had the power to validate the bonds, but also to say what the holders must show to bring themselves within its validating act. By section 3 the holders of the bonds validated by sections 1 and 2 were required to show that the bonds were issued in strict compliance with all pre-existing laws, and that the proceeds of the bonds were paid to the county treasurer for the use of the district issuing them. Thus two classifications were made of the bondholders: (a) Those holding bonds, the proceeds of which were paid to the county treasurer, and (b) those holding bonds, the proceeds of which were not paid to the county treasurer. It was further enacted by section 3 that the bonds of the first class were valid, meaning that proof of the necessary facts made the claimants holders in due course, or, in other words, vested them with title. But as to the second class, under the rule inclusio unius exclusio alterius est the claimants were not holders in due course, that is, were not owners of the bonds. This construction seems to us to be imperative, because section 6 of the special act dealing directly with these bonds, the proceeds of which were not paid to the county treasurer, expressly declared that they were not binding legal or moral obligations. These classifications, being reasonable and operating equally within the same class, are constitutional. 12 C. J. 1129. This answers appellants' propositions that section 6 of the special act is unconstitutional, and that section 3 of the general act is without meaning and void.

In certifying this case to the Supreme Court we thought section 3 and the special act bore upon the issue of validation, and we certified that the effect of this legislation was to invalidate these bonds. This appears from section (b) of our question 8. Under the answer of the Commission of Appeals we were in error in this construction. As this legislation does not relate to the issue of validation, but manifests the legislative intent above stated, it is our duty to give it effect. This construction does no violence to anything said by the Commission of Appeals, but gives vitality to every word of its opinion. This construction also does no violence to anything said by the Legislature, but gives effect to its manifest intent to validate all the bonds, as the Commission of Appeals construes it, and to require the holders to show that the proceeds of the bonds were paid to the county treasurer. If we have correctly construed this legislation, supplementing the construction placed thereon by the Commission of Appeals, it follows that appellants are not holders in due course and have failed to prove title to the bonds.

■ Appellants have a proposition that appellees, as mere taxpayers of road district No. 4, cannot prosecute this litigation. We

732

sent this proposition to the Supreme Court by our question No. 1, but it was not answered, upon the ground that it was immaterial, in view of the answer given to the question answered. By directing that we give effect to the answer of the Commission of Appeals, the Supreme Court clearly held that appellees had the right to maintain this suit. Otherwise it would have answered question No. 1 and ordered the case dismissed. That was the order made upon a similar question in Brownie Babbette Moore v. H. J. L. Stark (Tex. Com. App.) 17 S.W. (2d) 1037. But since, under the construction we are giving the validating acts, appellants have no title to these bonds, appellees have the right to sue to prevent an illegal disposition of the moneys of the district. City of Austin v. McCall, 95 Tex. 577, 68 S. W. 791.

Appellants have many propositions to the effect that these bonds were not made invalid by Browning v. Hooper, and that they are now valid and have been valid at all times since their issuance, independent of the validating acts. Without reviewing these propositions they are overruled. Browning. v. Hooper made these bonds absolutely void. We think that is a necessary conclusion to be drawn from the opinion itself and from the construction placed upon it by our Supreme Court in Anderson County Road District v. Pollard and Tom Green County v. Moody, supra.

Since under our construction of the validating acts appellants have no right, title, claim, or interest in the bonds, and in their hands they do not constitute valid legal or moral obligations, it follows that the judgment of the trial court must be affirmed in so far as it enjoins the commissioners' court of Shelby county from levying taxes for the payment of said bonds and the tax collector from collecting taxes for their payment and the county treasurer from receiving into the county treasury any money for their payment and all such officers and their successors in office from doing anything towards paying them to appellants, or anyone holding under them. But since, under the mandate of the Supreme Court, all bonds sued upon herein are valid, and the mere fact of their invalidity at the time of their sale does not deprive appellants of the character of holders in due course, it follows that all conclusions of fact and law made by the trial court in conflict with this mandate are hereby set aside and held for naught, and wherein the judgment of the trial court conflicts with the mandate, as we have construed it by this opinion, it must be, and is hereby, reversed, and judgment to this extent rendered for appellants.

WALKER, J., not sitting.